UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BUILDING SERVICE 32BJ HEALTH FUND,
BUILDING SERVICE 32BJ LEGAL SERVICES
FUND, BUILDING SERVICE 32BJ THOMAS
SHORTMAN TRAINING, SCHOLARSHIP AND
SAFETY FUND,

AFFIDAVIT IN SUPPORT
OF ORDER TO SHOW
CAUSE
08-CV-00898 (RWS)(JCF)

                                   Plaintiffs,

        -against-

SHAMROCK ACQUISITIONS, CORP. d/b/a
SHAMROCK BUILDING SERVICES AND
SHAMROCKBUILDING SERVICES CORPORATION
d/b/aSHAMROCK BUILDING SERVICES,

                           Defendant.

-------------------------------------------------------------------X

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NEW YORK     )

NELSON VALLE, being duly sworn, deposes and says:

1.      I am Auditing Delinquency Manager of the Building Service 32BJ Fringe Benefit Funds,

        which include the three plaintiffs in this action.  This affidavit is submitted in support of the

        Funds' application for a preliminary injunction compelling SHAMROCK ACQUISITIONS,

        CORP. d/b/a SHAMROCK BUILDING SERVICES AND SHAMROCK BUILDING

        SERVICES CORPORATION d/b/a SHAMROCK BUILDING SERVICES, ("Defendants")

        to pay their undisputed contributions owed to the Funds and to file Remittance Reports and

        to pay the corresponding amounts as per said Reports.  The facts set forth herein are based

        upon my direct knowledge except where stated to be upon information and belief, and as to

said facts, I believe them to be true.

2.    The Funds are jointly-administered, multi-employer, labor management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5)).  The Funds are employee benefit plans within the meaning of Sections 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. § 1002(2), (3), and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145). The Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29 U.S.C. § 1132(d)(1)).  The purpose of the Funds is to receive contributions from employers who are parties to collective bargaining agreements with Service Employees International Union, Local 32BJ, ("Union"), to invest and maintain those monies, and to distribute pensions, health and insurance benefits, and annuity payments to those employees eligible to receive them. The Funds maintain their office and are administered at 101 Avenue of the Americas, New York, New York 10013, in the City, County and State of New York.

3.    The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185) which represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C. § 142) and Section 3(4) of ERISA (29 U.S.C. § 1002(4)). The Union maintains its office and is administered at 101 Avenue of the Americas, New York, New York 10013, in the City, County and State of New York.

4.    Upon information and belief, at all times material hereto Defendants were, and continue to be, for-profit foreign corporations doing business in the States of , inter alia, New Jersey, Connecticut and Florida, as  employers within the meaning of Sections 3(5) and 515 of

ERISA (29 U.S.C. §§ 1002(5) and 1145), and were and are employers in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

5.    Defendants are party to a collective bargaining agreement (hereinafter collectively referred to as the "Agreement") with the Union wherein, *inter alia*, Defendants became obligated to pay and/or submit the required monetary contributions and/or reports to the Funds, for Defendants' employees within the units set forth in the Agreements with the Union. (A copy of the Agreement is annexed hereto as Exhibit "A")

6.    Pursuant to the Agreement, there became due and owing to the Funds from Defendants, benefit contributions through the date of this affidavit.

7.    I am advised that Section 515 of ERISA (29 U.S.C. § 1145) requires employers to pay benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

8.    At all times material hereto, Defendants failed to pay or timely pay and/or submit the required monetary contributions and/or reports to Plaintiffs Funds when due. I am advised that such failure to make payment or timely payment and/or submit reports constitutes a violation of Section 515 of ERISA (29 U.S.C. 1145).

9.    I am advised that Section 502 of ERISA (29 U.S.C.§ 1132) provides that, upon a finding of an employer violation of Section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a plaintiff, the unpaid benefit contributions, plus statutory damages and interest on the unpaid principal both computed at the rate provided for under the Plaintiffs Funds' plan or, if none, as set forth in the United States Internal Revenue Code (29 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

10.  Accordingly, Defendants are liable to the Funds for the payment and/or submission of the required monetary contributions and/or reports to the Funds as aforesaid, and are liable for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid principal, costs and disbursements incurred in this action, pursuant to Section 502 of ERISA (29 U.S.C. § 1132).

11.  The Funds commenced this action against Defendants because Defendants have historically been delinquent in their obligations to the Funds and that as of October 2007 Defendants simply stopped making any payments to the Funds. Upon information and belief, Defendants do not contest that they are party to the collective bargaining agreement with Service Employees International union, Local 32BJ ("Union") wherein Defendants became obligated to pay and/or submit the required monetary contributions and/or reports to the Funds, for Defendants' employees, who are employed within the units set forth in the agreements.

12.  The respective Funds, under the authority vested in them by the Collective Bargaining Agreement, and their respective trust agreements, have adopted and promulgated rules that require contributing employers, including Defendants, to make the afore-described contributions on a periodic basis (monthly). The rules further require the contributing employers, including Defendants, to file monthly Remittance Reports, which identify the individuals on whose behalves contributions are being made. The procedures for filing the Remittance Reports have been codified in a booklet adopted by the Trustees of the respective Funds. (A copy of the most recent booklet is annexed hereto as Exhibit "B".) Defendants have failed to comply with these obligations.

13.  The contributing employers are required to use the Funds' Remittance Reports when making payment. The Remittance Report forms contain a unique receipt number, that allows for the

processing of the information. The Report tells the Funds who is contributing . It identifies the period for which the report applies. The form provides information on the contributing employer's employees' status with the Funds. The employers are specifically advised that the failure to use the form can result in a delay of the paperwork, thus causing the employer's payment to be deemed late. This will result in the assessment of interest and liquidated damages.

14.     The respective Funds, under the authority vested in them by the Collective Bargaining Agreement, and their respective trust agreements, have promulgated Rules and Procedures for Enforcement of Employers' Reporting and Payment Obligations. (A copy of the current rules is annexed hereto as Exhibit "C"). Article III requires the assessment of 6% interest per year, liquidated damages of 2% per month and other costs of collection, including court costs, and attorneys' fees. (I am advised that there are existing Federal Court rulings upholding the Funds' interest and liquidated damages requirements.)

15.     The Funds have a good faith belief that absent an affirmative injunction compelling Defendants to pay those sums that are not disputed as being owed and requiring Defendants to file Remittance Reports and corresponding payments, that the ultimate ability of the Funds to collect these sums will be endangered.

16.     I am advised that the Defendants have acknowledged that they are in a financially difficult situation. Given the current cessation of payments it is extremely unlikely that the Defendants will ever file Remittance Reports and make timely payments absent mandatory injunctive relief.

17.     Based upon the above and the record as a whole, the Funds move the Court for a preliminary mandatory injunction compelling Defendants to pay the undisputable amounts owed and for

a further order enjoining Defendants from incurring any further delinquencies to the Funds.

18.    The Defendants' employees are employed primarily as office cleaners at various commercial locations in the State of New Jersey. The Funds' records are maintained on a location basis. For each location cleaned by a contributing employer, the employer completes a separate Remittance Report. Each month the Funds generate a new Remittance Report reflecting any changes in staffing that are reported by the employers during the previous month. The Remittance Reports contain the names of the employees on whose behalves contributions are to be made and the rate of contribution required. Under the Funds' contractually established Rules unless notified otherwise, there is a presumption that the employees previously reported continue to be employed and eligible for medical and other benefit coverage. In calculating the amounts owed, the Funds, following the established procedure, multiplied the number of covered employees (who continue to receive medical and other benefits) by the number of missed monthly contributions and multiplied again by the rate of contribution. The funds then calculate the interest and liquidated damages components based upon the length of the delinquent for each month's missed contribution. Annexed hereto as Exhibit "C" is a summary of the principal, interest and liquidated damages (calculated through January 1, 2008). The Defendants owe the Funds in principal the sum of $1,227,264,94; in interest the sum of $99,955.23; and in liquidated damages the sum of $385,895.71. In total as of this date the Funds are owed the sum of $1,713,115.88. My office also processes the obligations of contributing employers whose employees are covered by collective bargaining agreements covering Fairfield County in Connecticut. After this Complaint was filed, my office discovered that the defendants have also failed to pay contributions for the Connecticut employees. Annexed hereto as exhibit "D" is a summary of the principal, interest and

liquidated damages owed for the Connecticut employees. The Defendants owe the Funds, in addition to the amounts stated above, $129,640.00 in principal, $3,414.96 in interest and $13,659.84 in liquidated damages. In total the Defendants owe the Funds as of January 1, 2008, the sum of $1,859,829.88.

19.    I am advised that this application has been brought on by way of order to show cause because absent immediate injunctive relief the Funds and the covered employees will suffer irreparable harm. The Funds have a good faith belief that absent a preliminary injunction compelling Defendants to pay those sums that are not disputed as being owed and requiring Defendants to make current and future payments as same become due, that the ultimate ability of the Funds to collect these sums will be endangered. In the event Defendants fail to pay the Funds, the Funds will have no choice but to cut off coverage for all employees. This will result in all unit employees and their families losing their medical insurance; they and their families will no longer qualify for college scholarships, training and educational courses; and employees and their families will no longer be entitled to free or reduced cost representation by counsel.

20.    Upon information and belief, the cessation of health benefits as a result of an employer's failure to make contributions is not a qualifying event under COBRA. The employees will therefore not qualify under the statute to pay the cost of insurance out of their own pockets in order to maintain their health insurance coverage during the periods when their employer has failed to make its contributions (The Court is asked to take notice of 29 US§1163). Assuming *arguendo* the employees were permitted to pay the costs of the insurance, the costs would generally exceed the employees' abilities to pay out of their own pockets. Moreover, COBRA only applies to the medical insurance. It does not provide for continued coverage

for benefits under the other Funds.

21.    Based upon the above and the record as a whole, the Funds move the Court for a preliminary

mandatory injunction compelling Defendants to submit the Remittance Reports for all

periods beginning with the July 2005 (only to the extent not previously submitted) and to pay

all undisputed contributions owed pursuant to those Remittance Reports and for a further

order enjoining Defendants from incurring any further delinquencies to the Funds and that

the Court grant such other and further relief as is just and proper in the circumstance.

22.    No prior application has been made for the relief herein requested.


_____
NELSON VALLE

Sworn to before me this
31th day of January, 2008


_____
NOTARY PUBLIC
            ELIE CHENG
    Notary Public, State of New York
          No. 01CH6152226
       Qualified in Queens County
       Commission Expires 9/5/2010

# 2005 New Jersey Contractors Agreement

This agreement is between SEIU Local 32BJ, AFL-CIO (hereinafter "the Union") and the undersigned cleaning contractor (hereinafter "the Employer").

## Article 1. Recognition

1.1.    This agreement shall apply to all service employees employed in any facility in the State of New Jersey (north of Route 195) excluding commercial office buildings under 100,000 square feet, except that economic terms and conditions for residential buildings, hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses, bowling alleys, warehouses, route work, bank branches and industrial facilities shall be set forth in riders negotiated for each location covered by this agreement.

1.2.    The Employer shall be bound by and subject to the 2005 Independent Contractors Agreement (or the 2005 RAB Contractors Agreement) for all work performed within the geographic area subject to those agreements, and shall be bound by and subject to the 2005 Long Island Contractors Agreement, the 2005 Hudson Valley Contractors Agreement, the 2005 Fairfield County Agreement, the 2005 Hartford Agreement, or their RAB counterparts.

1.3.    Route work is all work performed by the Employer other than in facilities where the Employer contracts directly with the owner and/or agent. Transit terminals and complexes of contiguous commonly owned commercial buildings of 100,000 square feet or more, shall be subject to the terms of this Agreement.

1.4     If the Employer takes over jobs subject to rider agreements, it shall assume and be bound by the remaining terms of any such Rider agreements between the Union and the predecessor Employer. Such Rider Agreements shall be supplied in advance to the Contractors who bid on the work.

1.5     The Union is recognized as the exclusive collective bargaining representative for all classifications of service employees within the

1


1468

bargaining unit defined above. It is the parties intention that "service employees" as used in this Agreement is intended to cover the classifications and employees covered under the Independent Contractors Agreement.

1.6    Upon the execution of this Agreement, the Employer will provide the Union with a list of all its locations subject to the Agreement where it provides services. Upon the Union's written request, except where prohibited by law, the Employer will provide the Union in writing the name, address, job classification, social security number, hours of work, and present wage rate of each employee assigned to each account. The Employer shall monthly notify the Union in writing of the name, Social Security number and home address, wage rate, and job assignment and shift of each new employee engaged by the Employer. The Employer shall also monthly notify the Union in writing of all changes in employees' work status, including increases or decreases in working hours, changes in wage rates and or work locations and terminations or separations, and change in status from temporary to permanent, where applicable.

1.7    Immediately upon notification that the Employer has become a service provider at a new location subject to this Agreement, the Employer shall notify the Union in writing, sent by facsimile to the Union, at its main offices, of the new location and the date on which it is to commence performing work at that location.

1.8    The Employer will not impede, and the Union shall have the right of, access to its employees at the work-site. The Union will not disrupt the employees' work and shall provide reasonable notice. The Union and the Employer will develop procedures to provide for Union access appropriate for work sites with special security requirements.

1.9    The Employer (and its agents) will not take any action or make any statements that will state or imply opposition to the employees selecting the Union as their collective bargaining agent. Where required by law, upon the Union's demonstration that a majority of employees at a location (or contiguous grouping of locations) or at any other appropriate grouping of locations at the Union's option, have designated the Union as their bargaining representative by

signing authorization cards or petitions, the Employer shall recognize the Union for that location or locations.

## Article 2. Union Security and Check-off

2.1.    It shall be a condition of employment that all employees covered by this Agreement shall become and remain members in the Union on the 31st day following the date this Article applies to their work-location or their employment, whichever is later. The requirement of membership under this section is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly imposed.

2.2.    Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting an employee's discharge because he or she has not met the requirements of this Article, unless the Employer questions the propriety of doing so, he or she shall be discharged within 15 days of the letter if prior thereto he or she does not take proper steps to meet the requirements. If the Employer questions the propriety of the discharge, the Employer shall immediately submit the matter to the Arbitrator. If the Arbitrator determines that the employee has not complied with the requirements of this Article, the employee shall be discharged within 10 days after written notice of the determination has been given to the Employer.

2.3.    The Employer shall be responsible for all revenue lost by the Union by reason of any failure to discharge an employee who is not a member of the Union, if the Union has so requested in writing. In cases involving removal of employees for non-payment of the requirements of this Article, the Arbitrator shall have the authority to assess liquidated damages.

2.4.    The Union shall have the right to inspect the Employer's payroll records to determine the employees of the Employer who are covered by this Agreement.

2.5.    The Employer agrees to deduct monthly dues, initiation fees, American Dream Fund or Political Action Fund contributions, from the wages of an employee, when authorized by the employee in

writing in accordance with applicable law. The Union will furnish to the Employer the necessary authorization forms.

2.6.    If the Employer fails to deduct or remit to the Union the dues or other monies in accordance with this section by the twentieth (20th) day of the month, the Employer shall pay interest on such dues, initiation fees, or contributions at the rate of one percent per month beginning on the twenty-first (21st) day, unless the Employer can demonstrate the delay was for good cause due to circumstances beyond its control.

2.7.    If an employee does not revoke his or her dues check-off authorization at the end of the year following the date of authorization, or at the end of the current contract, whichever is earlier, the employee shall be deemed to have renewed his or her authorization for another year, or until the expiration of the next succeeding contract, whichever is earlier.

## Article 3: Discharge and Discipline

3.1.    Employees shall not be discharged, suspended or otherwise disciplined by the Employer without just cause after a sixty (60) day trial or probationary period.

3.2.    The Employer shall give any employee discharged or disciplined a written statement of the grounds for the discharge or discipline within a reasonable period of time not to exceed ten (10) working days after the discharge or discipline. The Employer shall provide the Union with a copy of any such statement at the same time.

## Article 4. Grievance/Arbitration

4.1.    All disputes or differences involving the interpretation or application of this agreement that arise between the Employer and the Union shall be resolved as provided in this Article, except where otherwise provided in this Agreement.

4.2.    All grievances, except a grievance involving basic wage violations including contributions to employee benefit funds, shall be brought within forty-five (45) calendar days after the Union or the Employer, as the case may be, has knowledge or should have had knowledge of

4

the dispute, unless the parties agree to an extension, or the Arbitrator finds one should be granted for good cause shown.

4.3.  Employer and Union representatives may hold a Step 2 meeting on unresolved grievances within thirty (30) days of the grievance except by mutual consent.

4.4.  All grievances not resolved through the grievance procedure shall be subject to arbitration before the Office of the Contract Arbitrator as provided for and under the terms of Article VI of the 2005 RAB Contractors Agreement, which are incorporated herein. All hearings shall be held in New Jersey unless otherwise agreed to by the Employer and the Union.

## Article 5. Contractor Transition

5.1.  When taking over or acquiring an account/location covered by this Agreement, the Employer is required to retain the incumbent employees and to maintain the same number of employees (and their hours) as were employed at the account/location by the predecessor employer, provided that the staffing level does not exceed the level in effect ninety (90) days prior to the takeover, except where there were increases in the staffing levels during that period resulting from customer requirements. Any employer who adds employees to any job in anticipation of being terminated from that job shall be required to place the added employees on its payroll permanently. These employees shall not replace any regular employees already on the payroll of that employer. The Employer may not reduce the staffing level on takeover of the account/location unless the Employer can demonstrate an appreciable decrease in the work to be done.

5.2.  Employees retained by the employer shall be given credit for length of service with the predecessor employer(s) for all purposes including but not limited to seniority and vacation entitlement, and completion of the trial period. Employees retained on takeover shall not have their rates of pay, hours worked or other terms and conditions reduced.

5.3.  The Employer shall be required to notify immediately in writing the Union as soon as the Employer receives written cancellation of an

account/location. Within two business days of such cancellation notice, the Employer shall provide to the Union a list of all employees at the account/location, their wage rates, the number of hours worked, the dates of hire, the number of sick days, the number of holidays, benefit contributions made for employees, and vacation benefits.

5.4    Failure of the Employer to notify the Union as required in 5.3, coupled with the successor employer's failure to recognize the Union and to maintain the terms and conditions of this agreement, will require the Employer to pay liquidated damages to the affected employees equal to two months wages.

5.5.    When an Employer bids on work covered by this Agreement, the Union will provide in a timely manner to all invited bidders, upon their written request, the information described in the 5.3 above. Inaccuracies in the information provided by the incumbent Employer shall not excuse any obligations under this agreement of the Employer acquiring the account/location.

5.6.    The Employer shall provide the Union within five (5) business days of taking over the account/location the names, rates of pay, hours and other benefits provided at the location.

5.7.    If the Employer loses the account/location, all accrued vacation benefits shall be included in a separate check. The successor Employer's obligation for benefits shall commence to accrue on the date that it takes over the account/location. The successor employer shall permit an employee, upon request, to take unpaid leave equal to the accrued vacation time which the predecessor employer paid to the employee, because of the turnover in the account.

## Article 6. Seniority and Bumping

6.1.    After completion of the probationary period, an employee shall attain seniority as of his/her date of employment. Seniority of an employee shall be based upon total length of service with the Employer or in the location, whichever is greater. Location shall be defined as the building or buildings located in the same complex covered by the same contract between the Employer and the managing agent or owner.

6

6.2.   In the event of a layoff due to a reduction in force, the inverse order of classification seniority, where applicable, shall be followed. Classifications shall not be based on the hours that employees work. In the event of bumping, there shall be no more than one bump. For layoffs within a building, seniority shall be based upon total length of service in the building.

6.3.   In the event of a layoff due to the loss of a building to a non-union employer, ninety (90) days after the lay-off or reduction from the location (as defined in 6.1), employees may bump the least senior employee within their classification within the County within which they were employed.

6.4.   Seniority shall continue to accrue while an employee is on leave of absence for less than six months, or for up to one year for employees laid off or covered by a workers compensation claim.

6.5.   Seniority rights are lost if any employee quits, is discharged for cause, fails to report or communicate within five (5) days after notice of recall or is otherwise terminated or laid-off or covered by a workers compensation claim for more than twelve months.

6.6.   Seniority shall prevail for the assignment of vacation selections. Overtime shall be offered to all employees in rotation by seniority. Nothing in this provision is intended to prevent the Employer from offering extra hours to part-time employees rather than to full time employees where the latter would receive overtime pay for those hours.

6.7.   There shall be no transfer of employees from one location to another without the Union's consent.

6.8.   Employees laid-off shall have recall rights for up to six months to open positions in locations within the County within which they were employed when laid-off.

Article 7.  Workload/Reductions

7.1.   No employee shall be assigned an unreasonable workload.

7.2.   The Employer shall not reduce the workforce assigned to any location
       either through attrition or lay-off without bargaining with the Union
       first, such bargaining to take place on an expedited basis.

## Article 8.  Prior Better Terms and Conditions

8.1.   At any location where the Employer is currently maintaining terms
       and conditions that are more favorable to employees (or some of
       them) than those provided for in this Agreement for that location,
       those terms and conditions shall continue to apply to the affected
       employees unless the Union and the Employer otherwise provide.

8.2.   All rider agreements currently in effect whose terms extend beyond
       December 31, 2004, shall remain in effect, except that fund
       contributions provided for in any such rider shall be made on the dates
       provided for in the Rider but at the rates in effect on those dates as
       provided for in this Agreement.

8.3.   The Employer shall assume and be bound by any rider agreement
       upon assuming operations at the account or location to which the rider
       agreement applies.

## Article 9: Picket Line/No Strike Clause

9.1.   No employee covered by this Agreement shall be required to pass
       lawful primary picket lines established in an authorized strike,
       including picket lines established by Local 32BJ pursuant to an
       authorized strike at another job location.  The Employer may not
       permanently replace or discipline any employee because he or she
       refuses to pass such a picket line.

9.2.   There shall be no lockouts, and no strikes except that the Union may
       call a strike or work stoppage (a) after forty-eight hours notice where
       the Employer has violated Article 1 of this agreement, (b) where the
       Employer fails to comply with an Arbitrator's Award within three
       weeks after the Employer's receipt of the award, or (c) after forty-
       eight hours notice where the Employer has failed provide the Union
       with information or notices required by Article 5 above.

9.3.    The Employer shall provide staffing information to the Union upon its request for any job which it currently services within five (5) business days of the request. If such information is not provided, the Union shall have the right to engage in a work stoppage until such information is supplied.

Article 10.  Leaves of Absence

10.1.   Employees may request a sixty (60) day Personal or Emergency Leave if they have been employed at least twelve (12) months. The employee must request Personal Leave in writing thirty (30) days prior to the date of the requested leave. The Employer shall not unreasonably withhold approval of such leave providing that the leave is compatible with the proper operation of the location. Emergency Leave may be requested on an emergency basis, provided that upon the employee's return to work the employer may request documentation of the emergency. No employee shall be entitled to a personal leave of absence more than once in a twelve (12) month period, unless otherwise required by law.

10.2.   Employers shall provide employees with leaves of absence for union related activities, where practicable, provided that such leave shall not be unreasonably denied. The Union and the Employer shall discuss the number and duration of such leaves of absence in any period of time.

10.3.   The Employer will comply with the provisions of applicable state and federal Family Leave laws regardless of the number of employees employed at any location or by the Employer.

Article 11. Vacations

11.1.   Employees shall accrue vacation with pay in accordance with the following schedule:

| Months on Payroll | Vacation with Pay |
|---|---|
| 6 months | 3 days |
| 1 Year | 1 week |
| 2 Years | 2 weeks |

| | |
|---|---|
| 5 years | 3 weeks |
| 15 years | 4 weeks |
| 25 years | 5 weeks. |

## Article 12.  Sick Days

12.1.  Commencing with an employee's twelfth month of employment, all employees shall receive a minimum of four paid sick days per calendar year except in an employee's first year of employment when he/she shall be entitled to a pro rated number of sick days for the time between the first day of his /her sixth month of employment to the end of the calendar year.  Sick leave not used by the end of the year shall not be carried over to the following year.

## Article 13.  Bereavement Pay and Jury Duty

13.1.  In the event of a death in the employee's immediate family (parent, spouse, child, brother or sister) the employee shall receive the next three succeeding days off from the date of death and shall be paid for any time lost from his regular schedule as a result of such absence.

13.2.  In the event of a death in the employees' spouse's family (mother-in-law, father-in-law, sister-in-law, brother-in-law) the employee shall receive one day off for the purpose of attending the funeral and shall be paid lost time due to such absence.

13.3.  An employee may be required to submit proof of death and/or that the deceased was within the class of relatives specified and/or that the employee attended the funeral.

13.4.  An employee who has completed his probationary period and who is required to report to court to answer a jury summons or serve as a juror on days he is regularly scheduled to work will be reimbursed the difference between the amount he receives for jury service and his regular pay. Jury Duty pay shall be limited to two weeks in any year. No employee may be required to work on a day he has jury duty.

13.5.  An employee may be required to submit proof of jury duty and/or proof that the employee attended jury duty and/or was paid for said service.

Article 14. Health Insurance

14.1.  The Employer agrees to make payment into a health trust fund, known
as the "Building Service 32BJ Health Fund☐ to cover employees
covered by this Agreement and/or group life insurance coverage under
such provisions, rules and regulations and for such benefits as may be
determined by the Trustees of the fund, as provided in the Agreement
and Declaration of Trust, at the contribution rates provided for herein.

14.2.  Employees who are on workers☐compensation or who are receiving
disability benefits or disability pension shall be covered by the Health
Fund until they may be covered by Medicare or thirty (30) months
from the date of disability, whichever is earlier.

14.3.  Effective January 1, 2005, the Employer shall contribute to the Fund
$435 per month for each regular full-time employee.

14.4.  Effective January 1, 2006, the rate of contribution to the Fund shall be
$487 per month for each regular full-time employee.

14.5.  Effective January 1, 2007, the rate of contribution to the Fund shall be
$544 per month for each regular full-time employee.

14.6.  Effective July 1, 2006, the Employer shall contribute to the Fund for
each regular part-time employee in the City of Newark and Hudson
County $20 per month.  Effective July 1, 2007, the Employer shall
contribute to the Fund for each regular part-time employee in the City
of Newark and Hudson county $40 per month.

14.7.  Effective April 1, 2007, the Employer shall contribute to the Fund for
each regular part-time employee in Essex County (excluding the City
of Newark) $20 per month.

14.8.  Effective July 1, 2007, the Employer shall contribute to the Fund for
each regular part-time employee in Somerset County $20 per month.

14.9.  Effective October 1, 2007, the Employer shall contribute to the Fund
for each regular part-time employee in Hunterdon, Middlesex,
Monmouth, Morris, Passaic, and Union Counties $20 per month.

14.10. Effective January 1, 2005, the Employer shall make health fund contributions for all full-time window cleaners at the rate for full-time employees.

14.11. At all locations at which the Employer is currently contributing to the Building Service 32BJ Health Fund for the "Suburban Plan of Benefits," the Employer shall make contributions to a "Preferred Tri-State Plan of Benefits" for full-time employees at the following monthly rates: effective January 1, 2005, $485; effective January 1, 2006, $539; effective January 1, 2007, $598. The Employer shall contribute for all new employees assigned to such locations after January 1, 2005, as otherwise provided for in Article 14.

14.12. Full-time employees shall be defined as those employees regularly employed 27 and one-half hours or more per week.

14.13. Any Employer who has a plan in effect prior to the effective date of this Agreement which provides health benefits the equivalent of, or better than, the benefits provided for herein, and the cost of which to the Employer is at least as great, may cover its employees under this existing plan or under this Fund. If the Trustees decide the existing plan does not provide equivalent benefits, but does provide health benefits superior to one or more types of health benefits under this Fund, the Employer may participate in the Fund wholly, or partially for hospitalization and/or surgical coverage, and make its payments to the Fund in the amount determined by the Trustees uniformly for all similarly participating Employers.

14.14. If during the term of this agreement, the Trustees find the payment provided herein is insufficient to maintain benefits, and adequate reserves for such benefits, they shall require the parties to increase the amounts needed to maintain such benefits and reserves. In the event the Trustees are unable to reach agreement on the amount required to maintain benefits and reserves, the matter shall be referred to arbitration.

Article 15.  Legal Fund

15.1.  Effective January 1, 2005, the Employer shall make contributions to
the Local 32BJ Group Pre-Paid Legal Plan of $223.60 per year per
employee under the terms of Legal Fund.

Article 16.  Training Fund

16.1.  For Hunterdon, Middlesex, Monmouth, Morris, Passiac and Union
Counties, effective April 1, 2005, the Employer shall make
contributions to the Local 32BJ Thomas Shortman Training Fund of
$145.60 per year per employee under the terms of Thomas Shortman
Fund.

16.2.  For Bergen and Mercer Counties, effective April 1, 2006, the
Employer shall make contributions to the Local 32BJ Thomas
Shortman Training Fund of $145.60 per year per employee under the
terms of the Thomas Shortman Fund.

16.3.  For Hudson County, Essex County (including the City of Newark),
and Somerset County, effective January 1, 2005, the Employer shall
make contributions to the Thomas Shortman Training Fund of
$145.60 per year per employee under the terms of the Thomas
Shortman Fund.

Article 17. Provisions Applicable to All Funds

17.1.  If the Employer fails to make required reports or payments to the
Funds, the Trustees may in their sole and absolute discretion take any
action necessary, including but not limited to immediate arbitration
and suits at law, to enforce such reports and payments, together with
interest and liquidated damages as provided in the Funds' Trust
Agreements, and any and all expenses of collection, including but not
limited to counsel fees, arbitration costs and fees, court costs, fees and
interest.

17.2.  Where a contributing Employer is regularly and consistently
delinquent, the Trustees in their discretion may require such security
as they deem necessary.

17.3.   The Trustees of the Funds shall make such amendments to the Trust
Agreement, and shall adopt such regulations, as may be required to
conform to applicable law, and which shall in any case provide that
employees whose work comes within the jurisdiction of the Union
(which shall not be considered to include anyone in an important
managerial position) may only be covered for benefits if the building
in which they are employed has a collective bargaining agreement
with the Union.  Any dispute about the Union's jurisdiction shall be
settled by the Arbitrator if the parties cannot agree.

17.4.   Employees hired on or after January 1, 1997, but before January 1,
2005, shall have a waiting period of three (3) months before becoming
eligible to be participants in the Funds, and no contributions shall be
made on behalf of the employees over the three-month period.
Employees hired on or after January 1, 2005 shall have a waiting
period of six (6) months before becoming eligible to be participants in
the Funds, and no contributions shall be made on behalf of the
employees over the six-month period.

## Article 18. Holidays

18.1.   The following are designated as paid holidays for post-probationary
employees: New Years Day, Labor Day, Memorial Day,
Thanksgiving Day, Christmas Day, Independence Day, and a Floating
Day. Whenever any of these stated holidays shall fall on a Saturday or
Sunday, it shall be observed on the following Monday or the
preceding Friday, depending upon when the building is closed.
Holiday pay shall be equal to an employee's regular straight time pay.
An employee required to work on a holiday shall receive his/her
regular pay plus his/her holiday pay.

## Article 19.  Bulletin Boards.

19.1.   Where permission is granted by the building owner/manager, the
Employer shall furnish a bulletin board at a conspicuous location in
each of the Employer's locations and shall permit representatives of
the Union, including stewards, to post notices pertaining to Union
affairs on the bulletin board.

14

## Article 20.  Vacancies and Promotions

20.1.  The Employer shall post all vacancies. Preference in filling vacancies shall be given to employees already employed in a building based on building seniority, but skill, ability and qualifications shall also be considered.  Part-time employees shall be given preference by seniority in bidding for open full-time positions.

## Article 21.  The Workweek, Overtime and Method of Pay

21.1.  The Employer shall establish a regular workweek.  Any work performed over forty hours in a week shall be paid at time and one half the employee's regular rate of pay.  Employees who work at more than one location shall have their hours combined in determining their overtime pay.

21.2.  In the City of Newark and the Hudson Waterfront, for all locations (or contiguous groupings of locations) over 400,000 square feet, the minimum weekly shift shall be 27 and ½ hours.

21.3.  For all other locations, the minimum regular schedule for employees shall be 4 hours per night.

21.4.  Employees shall be paid a minimum of 4 hours pay per night when called in to work.

21.5.  All wages, including overtime, shall be paid weekly in cash or check with an itemized statement of payroll deductions. If a regular pay day falls on a holiday, employees shall be paid on the preceding day.

## Article 22. Work Authorization and Status Disputes

22.1.  Recognizing that questions involving an employee's immigration/work status or personal information may arise during the course of his/her employment, and that errors in an employee's documentation may be due to mistake or circumstances beyond an employee's control, the Employer agrees to the following: in the event an issue or inquiry arises involving the immigration status or employment eligibility of a non-probationary employee, the Employer shall promptly notify the employee in writing and forward a copy of

the notification to the Union.  If permissible under applicable law and/or regulations, the affected bargaining unit member shall be afforded reasonable opportunity to remedy the identified problem or to secure acceptable documentation demonstrating that the identified problem is in the process of review or correction before adverse action is taken. Any lawful changes in the employee's documentation or lawful correction in his/her social security number shall not be considered new employment or a break in service. If the bargaining unit member does not remedy the issue within 4 months, the bargaining unit member may be discharged and the Employer shall have no further obligation to hold a bargaining unit member's position. If the bargaining unit member obtains the valid documentation referenced above, when necessary, he/she will, consistent with the operational needs of the Employer, be permitted reasonable unpaid time off to attend relevant proceedings or visit pertinent agencies, for the purposes of correcting the identified problem, provided the Employer is given adequate notice of planned absences and verification of appointments, hearings or other proceedings for which time off is requested. A "no-match" letter from the Social Security Administration shall not itself constitute a basis for taking adverse employment action against an employee or for requiring an employee to verify work authorization, subject to applicable law and/or regulation.

Article 23.  Successors, Assigns and Subcontracting

23.1.  The Employer shall not subcontract, transfer, lease or assign, in whole or in part, to any other person, firm, corporation, partnership, or non-unit work or workers, bargaining unit work presently performed or hereafter assigned to employees in the bargaining unit, except to the extent required by government regulations regarding minority or female owned enterprises, in which event the Employer shall ensure that such enterprises employ bargaining unit employees under the wages and benefits provided under this Agreement.

23.2.  In the event the Employer sells or transfers all or any part of its business or accounts which are subject to this Agreement, the Employer shall require the acquiring employer to assume this Agreement.

23.3. To the extent permitted by law, this agreement shall be binding on any other entities that the Employer, through its officers, directors, partners, owners, or stockholders, either directly or indirectly (including but not limited through family members), manages or controls, provided such entity or entities perform(s) work subject to this Agreement.

## Article 24. Non-Discrimination

24.1. There shall be no discrimination against any employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law.

## Article 25. Wages

25.1. Bergen and Mercer Counties

The minimum wage rate for cleaners on the effective date of this agreement shall be $7.00 per hour.

Effective April 1, 2005, the minimum wage rate for cleaners shall be $7.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of thirty-five cents ($0.35) per hour, whichever results in the higher rate of pay.

Effective April 1, 2006, the minimum wage rate for cleaners shall be $8.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of forty cents ($0.40) per hour, whichever results in the higher rate of pay.

Effective April 1, 2007, the minimum wage rate for cleaners shall be $9.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of forty cents ($0.40) per hour, whichever results in the higher rate of pay.

25.2. Hunterdon, Middlesex, Monmouth, Morris, Passaic, and Union Counties

The minimum wage rate for cleaners on the effective date of this agreement shall be $7.75 per hour.

Effective April 1, 2005, the minimum wage rate for cleaners shall be $8.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of thirty-five cents ($0.35) per hour, whichever results in the higher rate of pay.

Effective April 1, 2006, the minimum wage rate for cleaners shall be $9.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of forty cents ($0.40) per hour, whichever results in the higher rate of pay.

Effective April 1, 2007, the minimum wage rate for cleaners shall be $9.95 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective October 1, 2007, the minimum wage rate for cleaners shall be $10.10 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of fifteen cents ($0.15) per hour, whichever results in the higher rate of pay.

25.3. Somerset County

Effective January 1, 2005, the minimum wage rate for all cleaners shall be $8.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of thirty-five cents ($0.35) per hour, whichever results in the higher rate of pay.

Effective January 1, 2006, the minimum wage rate for all cleaners shall be $9.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of forty cents ($0.40) per hour, whichever results in the higher rate of pay.

Effective January 1, 2007, the minimum wage rate for all cleaners shall be $9.95 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2007, the minimum wage rate for all cleaners shall be $10.10 per hour. All cleaners shall receive either the minimum

hourly rate provided for above or an increase of fifteen cents ($0.15) per hour, whichever results in the higher rate of pay.

25.4. Essex County (excluding City of Newark)

The minimum wage rate for all cleaners on the effective date of this agreement shall be $8.75 per hour.

Effective October 1, 2005, the minimum wage rate for all cleaners shall be $9.75 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of thirty-five cents ($0.35) per hour, whichever results in the higher rate of pay.

Effective October 1, 2006, the minimum wage rate for all cleaners shall be $9.95 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective April 1, 2007, the minimum wage rate for all cleaners shall be $10.10 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of fifteen cents ($0.15) per hour, whichever results in the higher rate of pay.

Effective October 1, 2007, the minimum wage rate for all cleaners shall be $10.30 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

25.5. West Hudson and Meadowlands

The minimum wage rate for all cleaners on the effective date of this agreement shall be $9.75 per hour.

Effective January 1, 2006, the minimum wage rate for all cleaners shall be $9.95 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2006, the minimum wage rate for all cleaners shall be $10.10 per hour. All cleaners shall receive either the minimum

hourly rate provided for above or an increase of fifteen cents ($0.15) per hour, whichever results in the higher rate of pay.

Effective January 1, 2007, the minimum wage rate for all cleaners shall be $10.30 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2007, the minimum wage rate for all cleaners shall be $10.50. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

25.6.  Hudson Waterfront

The minimum wage rate for all cleaners on the effective date of this agreement shall be $10.75 per hour.

Effective January 1, 2006, the minimum wage rate for all cleaners shall be $10.95 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2006, the minimum wage rate for all cleaners shall be $11.10 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of fifteen cents ($0.15) per hour, whichever results in the higher rate of pay.

Effective January 1, 2007, the minimum wage rate for all cleaners shall be $11.30 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2007, the minimum wage rate for all cleaners shall be $11.50 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

### 25.7. Newark

The minimum wage rate for all cleaners on the effective date of this agreement shall be $11.75 per hour.

Effective January 1, 2006, the minimum wage rate for all cleaners shall be $11.95 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2006, the minimum wage rate for all cleaners shall be $12.10 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of fifteen cents ($0.15) per hour, whichever results in the higher rate of pay.

Effective January 1, 2007, the minimum wage rate for all cleaners shall be $12.30 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

Effective July 1, 2007, the minimum wage rate for all cleaners shall be $12.50 per hour. All cleaners shall receive either the minimum hourly rate provided for above or an increase of twenty cents ($0.20) per hour, whichever results in the higher rate of pay.

### 25.8. Leadpersons and Handypersons

Leadpersons and handypersons shall be paid $2.00 per hour more than the minimum rate provided for cleaners in the applicable county or portion thereof, or shall receive the overscale increase as provided above if those increases shall result in a higher rate of pay.

### 25.9. Window-Cleaners

Effective January 1, 2005, the minimum wage rate for window cleaners shall be $14.88 per hour.

Effective July 1, 2005, the minimum wage rate for all window cleaners shall be $15.08 per hour.

Effective January 1, 2006, the minimum wage rate for all window cleaners shall be $15.43 per hour.

Effective January 1, 2007, the minimum wage rate for all window cleaners shall be $15.83 per hour.

Window cleaners shall receive the minimum wage rates provided for herein or the overscale increases as provided above, whichever shall result in the higher rate of pay.

25.10. Increase in statutory minimum wage rate.

The minimum wage rate for all cleaners shall be at all times at least fifty cents ($.50) above the statutory minimum wage for cleaners in that county or portion thereof.

## Article 26.   Most Favored Nations

26.1.   If the Union agrees to different economic terms and conditions more favorable to the Employer at any location, those terms and conditions shall apply to any other Employer who takes over that location for the duration of the Union's agreement with the prior Employer.

26.2.   In the event that the Union enters into a contract on or after December 1, 2007 for a Class A or B commercial office building, whose economic terms or conditions are more favorable to such Employer than the terms contained in this agreement with respect to that building, the Employer shall be entitled to and may have the full benefit of any and all such more favorable terms for any of its similar buildings within the same zone, upon notification to the Union. This clause shall not apply to contracts entered into before December 1, 2007 even if the terms of any such contracts extend beyond that date, provided that any such riders set forth a schedule of wage and benefit increases.

## Article 27. Duration

27.1.   This agreement shall be effective from January 1, 2005 until December 31, 2007.

27.2.  Upon the expiration date of this agreement as set forth above, this
agreement shall thereafter continue in full force and effect for an
extended period until a successor agreement shall have been executed.
During the extended period, all terms and conditions hereof shall be in
effect subject to the provisions of this paragraph.  During the extended
period, the Employer shall negotiate for a successor agreement
retroactive to the expiration date, and all benefits and improvements
in such successor agreement shall be retroactive, if such agreement
shall so provide.  In the event the parties are unable to agree upon
terms of a successor agreement, the Union upon three (3) days oral or
written notice to the Employer, may engage in any stoppage, or strike
without thereby terminating any other provision of this agreement,
until the successor agreement is concluded.


SEIU Local 32BJ, AFL-CIO          Employer   SHAMROCK BUILDING SERVICES

By:                               By:

Dated:   7/18/05                  Dated:   7/15/05

## SIDE LETTER ON PART-TIME
## DRUG CARD

Notwithstanding anything to the contrary in the 2005 New Jersey Contractors Agreement, the Employer shall not have any obligations to contribute pursuant to Article 14.6 through 14.9 for any county or zone, unless and until the Union has demonstrated in that zone or county, whichever may be applicable, that the terms of the Agreement, or any rider thereto, are in force in 55% of the Class A or B commercial office buildings 100,000 square feet or over (including contiguous groupings). Riders shall be considered in force if they result in the attainment of minimum wage rates as negotiated in the successor agreement to the 2005 New Jersey Contractors Agreement some time during the term of the successor agreement.

Any dispute regarding the Union's demonstration in any county or zone shall be resolved through Article 4 of the Agreement.

## <u>SIDE LETTER ON BI-WEEKLY</u><br><u>PAY SYSTEMS</u>

It is the parties' understanding that Employers who currently maintain bi-weekly pay systems shall not be required to convert their existing accounts/locations to a weekly system until December 31, 2007.

## SIDE LETTER ON CONNECTICUT

1. The Employer agrees that it will recognize the Union as the exclusive bargaining representative of its employees within classifications defined in the Hartford Contractors' Agreement, at its locations or facilities within the State of Connecticut (outside the scope of the Fairfield Contractor's Agreement and the Hartford Contractor's Agreement), upon the Union's demonstration through authorization cards or petitions that a majority of the Employer's employees at any location or grouping of locations, at the Union's option, have designated the Union as their exclusive collective bargaining representative. The Employer shall have no obligation to recognize the Union under this Memorandum of Understanding prior to July 1, 2006.

2. Upon the Union's request, the Employer will provide the Union with the names, addresses, telephone numbers and work locations of its employees, within the scope of this Memorandum of Understanding, and shall update that information at reasonable intervals upon the Union's request.

3. The Employer will provide the Union with access to its work locations, subject to the customer's rules and requirements, and upon prior notice, to meet with employees on non-work time and in non-work areas, provided there is no interference with the conduct of the customer's business or with the performance of work.

4. The Employer will not take any action or make any statement in opposition to the selection by its employees of a collective bargaining agent, nor shall it state any preference or opposition to the Union as a bargaining agent for its employees.

5. Any disputes regarding the implementation of this Memorandum of Understanding shall be resolved under the grievance/arbitration procedure set forth in the Hartford Contractors' Agreement.

## <u>SIDE LETTER ON TRANSFERS</u>

If a customer, in writing, bars an employee from a location, but the Employer lacks good cause to terminate the employee, the Union and the Employer shall meet to discuss an alternative assignment for the employee that protects the employee's hours, wages and benefits. If no such assignment is available or can be agreed upon, then the dispute shall be resolved in accordance with the provisions of the collective bargaining agreement.

## SIDE LETTER ON TRAINING AND LEGAL FUNDS

The Union and the Employers will establish a committee, including contractors operating in New Jersey, to work with the Training and Legal Fund to facilitate and enhance participation by Fund participants working in New Jersey. The goal of the committee is to maximize participation by those participants and to recommend changes in the delivery of the benefits to those participants to achieve that end.

G:\Industry Agreements\nj2005.final as of 12-20-04.doc



**32BJ**

**SEIU**

**Stronger Together**

SERVICE EMPLOYEES
INTERNATIONAL UNION
AFL-CIO, CLC

**MICHAEL P. FISHMAN**
President

**KEVIN J. DOYLE**
Executive Vice President

**HÉCTOR J. FIGUEROA**
Secretary-Treasurer

**KYLE BRAGG**
Vice President

**LENORE FRIEDLAENDER**
Vice President

**BRIAN LAMBERT**
Vice President

**KRYSTYNA ROSARIO**
Secretary

**Online at:**
www.seiu32bj.org

**Local 32BJ Headquarters:**
101 Avenue of the Americas
New York, NY 10013-1991
212.388.3800

**Westchester Office:**
140 Huguenot Street
New Rochelle, NY 10801
914.637.7000

**Connecticut Office:**
196 Trumbull Street, Suite 400
Hartford, CT 06103
860.560.8674
1.800.228.5253

**Long Island Office:**
2545 Hempstead Turnpike
Suite 300
East Meadow, NY 11554
516.579.4020

**New Jersey Office:**
560 Broad Street, 4th Fl.
Newark, NJ 07102
973.824.32BJ
1.866.5JANITOR

**Window Cleaners Division:**
101 Avenue of the Americas
20th Floor
New York, NY 10013
212.539.2901

**Theater, Amusement
& Cultural Division**
101 Avenue of the Americas
20th Floor
New York, NY 10013
212.388.3974

36

July 6, 2005

Mr. Carl Shanahan, President
Shamrock Building Services
280 Ocean Drive East
Stamford, CT 06906

Dear Mr. Shanahan:

    Enclosed is the 2005 New Jersey Contractors Agreement. This agreement has been negotiated with cleaning contractors operating in the New Jersey market. As such, the agreement reflects a series of compromises and adjustments, and substantial modifications from the Union's initial proposals.

    The Union believes this agreement is an appropriate one for the market and will allow contractors to maintain and grow market share while providing continued improvements for employees.

    Please sign the agreement and return it to the Union to the attention of Desma Holcomb, Assistant Director, 19th Floor, SEIU Local 32BJ, 101 Avenue of the Americas, New York, NY 10013.

    Upon receipt, we will forward a counter-signed copy for your records.

    If you have any questions, please contact Secretary-Treasurer Hector Figueroa at 212-388-3851.

    Very truly yours,

Michael P. Fishman
President



**Fairfield Office
77 Bedford Street, 4th Floor
Stamford, Connecticut 06901
203.602.6615**

# Table of Contents

ARTICLE  1 – Recognition ........................1
ARTICLE  2 – Union Security and Check-off .4
ARTICLE  3 – Discharge/Discipline .............7
ARTICLE  4 – Grievance/Arbitration ...........7
ARTICLE  5 – Contractor Transition ...........8
ARTICLE  6 – Seniority and Bumping .........11
ARTICLE  7 – Workload/Reductions . . . . . . .13
ARTICLE  8 – Leaves of Absence ..............14
ARTICLE  9 – Bereavement and Jury Duty ...15
ARTICLE 10 – Sick Leave  .......................16
ARTICLE 11 – Vacations ...........................17
ARTICLE 12 – Holidays  ..........................18
ARTICLE 13 – The Workweek ...................19
ARTICLE 14 – Uniforms ..........................21
ARTICLE 15 – Bulletin Boards  ..................21
ARTICLE 16 – Vacancies and Promotions  . . .21
ARTICLE 17 – Military Service ..................22
ARTICLE 18 – Supervisors .......................22
ARTICLE 19 – Shop Stewards  ...................22
ARTICLE 20 – SEIU Local 32BJ
                Connecticut District Health
                and Welfare Fund ...............24
ARTICLE 20A – Building Service 32BJ
                Health Fund ......................26
ARTICLE 21 – Wages ..............................30
ARTICLE 22 – Successors, Assigns and
                Subcontracting ...................32

ARTICLE 23 – Non-Discrimination .............33
ARTICLE 24 – Most Favored Nations .........34
ARTICLE 25 – Prior Better Terms and
                    Conditions ..........................35
ARTICLE 26 – Picket Line/No Strike Clause .35
ARTICLE 27 – Work Authorization and Status
                    Disputes ...........................37
ARTICLE 28 – Complete Agreement ...........38
ARTICLE 29 – Management Rights ............39
ARTICLE 30 – Duration ...........................40
Side Letters – ....................................42-43

# FAIRFIELD COUNTY
# CLEANING CONTRACTORS
# MASTER AGREEMENT

This Agreement is made between Service Employees International Union, Local 32BJ, AFL-CIO, CLC (hereinafter "the Union") and the undersigned cleaning contractor (hereinafter "the Employer").

## ARTICLE 1
## RECOGNITION

**1.1.**  This Agreement shall apply to all service employees employed in any facility, excluding commercial office buildings under 100,000 square feet, in Fairfield County, Connecticut. Economic terms and conditions for residential buildings, hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses, bowling alleys and industrial facilities, and bank branches shall be set forth in riders negotiated for each location covered by this Agreement.

**1.2.**  The Union is recognized as the exclusive collective bargaining representative for all of the Employer's employees performing cleaning

1

and/or janitorial services in the bargaining unit, but excluding sales employees, route employees, office clericals, managers, guards and supervisors within the meaning of the LMRA.

**1.3**. The Employer shall be bound by and subject to the 2005 Independent Contractors Agreement (or the 2005 RAB Contractors Agreement), the 2005 Long Island Contractors Agreement, the 2005 New Jersey Contractors Agreement, the 2005 Hudson Valley Contractors Agreement, and the 2005 Hartford County Agreement, in the event the Employer performs work covered by those agreements.

**1.4.** Transit terminals, and complexes of contiguous commonly owned commercial buildings of 100,000 square feet or more, shall be subject to the terms of this Agreement.

**1.5.** If the Employer takes over jobs subject to rider agreements, it shall assume and be bound by the remaining terms of any such rider agreements between the Union and the predecessor Employer. Such Rider Agreements shall be supplied in advance to the Contractors who bid on the work.

**1.6.** Upon the execution of this Agreement, the Employer will provide the Union with a list of all its locations subject to the Agreement where it provides services. Upon the Union's written request, except to the extent prohibited by law, the Employer will provide the Union in writing for each account the name, Social Security number, home address, job classification, pay rate and shift of each employee assigned to each account. The Employer shall monthly notify the Union in writing of the name, Social Security number and home address, wage rate and job assignment and shift of each new employee engaged by the Employer. The Employer shall also monthly notify the Union in writing of all changes in employees' work status, including increases or decreases in working hours, changes in wage rates and or work locations and terminations or separations.

**1.7.** Within five (5) business days after notification that the Employer has become a service provider at a new location subject to this Agreement, the Employer shall notify the Union in writing of the new location. The notice shall be sent by facsimile to the Union at 101 Avenue of the Americas, New York, New York.

**1.8.** The Employer will not impede the Union's access to its employees at the work-site. The Union will not disrupt the employees work and shall provide reasonable notice. The Union and the Employer will develop procedures to provide for Union access appropriate for work sites with special security requirements.

**1.9.** The Employer (and its agents) will not take any action or make any statements that state or imply opposition to the employees selecting the Union as their collective bargaining agent. Where required by law, and upon the Union's demonstration that a majority of employees at a location (or contiguous grouping of locations), or at any other appropriate grouping of locations, at the Union's option, have designated the Union as their bargaining representative by signing authorization cards or petitions, the Employer shall recognize the Union for that location or locations.

## ARTICLE 2
## UNION SECURITY AND CHECK-OFF

**2.1.** It shall be a condition of employment that all employees covered by this Agreement shall become and remain members in the Union on the 31st day following the date this Article applies to

4

their work-location or their employment, whichever is later. The requirement of membership under this section is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly imposed.

**2.2.** Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting an employee's discharge because he or she has not met the requirements of this Article, unless the Employer questions the propriety of doing so, he shall be discharged within 15 days of the letter if prior thereto he does not take proper steps to meet the requirements. If the Employer questions the propriety of the discharge, the Employer shall immediately submit the matter to the Arbitrator. If the Arbitrator determines that the employee has not complied with the requirements of this Article, the employee shall be discharged within 10 days after written notice of the determination has been given to the Employer.

**2.3.** The Employer shall be responsible for all revenue lost by the Union by reason of any failure to discharge an employee who is not a member of the Union, if the Union has so requested in writing.

**2.4.** The Employer shall make available employee payroll and personnel records to an authorized Union representative or Fund representative on reasonable demand by the Union or the Fund.

**2.5.** The Employer agrees to deduct monthly dues, initiation fees, COPE or American Dream Fund contributions, from the wages of an employee, when authorized by the employee in writing in accordance with applicable law. The Union will furnish to the Employer the necessary authorization forms.

**2.6.** If the Employer fails to deduct or remit to the Union the dues or other monies in accordance with this Article by the 20th day, the Employer shall pay interest on such dues at the rate of one percent per month beginning on the 21st day of the following month, unless the Employer can demonstrate the delay was for good cause due to circumstances beyond its control.

**2.7.** If an employee does not revoke his dues check-off authorization at the end of the year following the date of authorization, or at the end of the current contract, whichever is earlier, the

employee shall be deemed to have renewed his authorization for another year, or until the expiration of the next succeeding contract, whichever is earlier.

## ARTICLE 3
## DISCHARGE/DISCIPLINE

**3.1.** Employees shall not be discharged, suspended or otherwise disciplined by the Employer without just cause after a sixty (60) calendar day trial or probationary period.

**3.2.** The Employer shall give any employee discharged or disciplined a written statement of the grounds for the discharge or discipline within a reasonable period of time not to exceed ten (10) working days after the discharge or imposition of discipline. A copy of the statement shall be sent to the Union at the same time.

## ARTICLE 4
## GRIEVANCE/ARBITRATION

**4.1.** All disputes or differences involving the interpretation or application of this agreement that arise between the Employer and the Union shall be resolved as provided in this Article, except where otherwise provided in this Agreement.

**4.2.** All grievances, except a grievance involving basic wage violations including contributions to employee benefit funds, shall be brought within forty-five (45) calendar days after the Union or the Employer has knowledge or should have had knowledge of the dispute, unless the parties agree to an extension, or the Arbitrator finds one should be granted for good cause shown.

**4.3.** Employer and Union representatives may hold a Step 2 meeting on unresolved grievances within thirty (30) calendar days of the grievance at either party's request, provided that such meeting shall not be cause to delay arbitration.

**4.4.** All grievances not resolved at Step 2 shall be subject to arbitration before the Office of the Contract Arbitrator ("OCA") as provided for and under the terms of the 2005 Independent Contractors Agreement whose terms are incorporated herein. All hearings shall be held at the location designated by OCA unless otherwise agreed to by the Employer and the Union.

## ARTICLE 5
## CONTRACTOR TRANSITION

**5.1.** When taking over or acquiring an account/location covered by this Agreement, the

8

Employer is required to retain the incumbent employees and to maintain the same number of employees (and their hours) as was employed at the account/location by the predecessor employer, provided that the staffing level does not exceed the level in effect ninety (90) days prior to the takeover, except where there were increases in the staffing levels during that period resulting from customer requirements. Any employer who adds employees to any job in anticipation of being terminated from that job shall be required to place the added employees on its payroll permanently. These employees shall not replace any regular employees already on the payroll of that employer. The Employer may not reduce the staffing level on takeover of the account/location unless the Employer can demonstrate an appreciable decrease in the work to be done.

**5.2.** Employees retained by the employer shall be given credit for length of service with the predecessor employer(s) for all purposes including but not limited to seniority and vacation entitlement, and completion of the trial period. Employees retained on takeover shall not have their rates of pay, hours worked or other terms and conditions reduced.

9

**5.3.**  The Employer shall be required to notify in writing the Union within five (5) business days after the Employer receives written cancellation of an account/location. Within ten (10) business days of such cancellation notice, the Employer shall provide to the Union a list of all employees at the account/location, their wage rates, the number of hours worked, the dates of hire, the number of sick days, the number of holidays, benefit contributions made for employees, and vacation benefits.

**5.4.**  Failure of the Employer to notify the Union as required in 5.3, coupled with the successor employer's failure to recognize the Union and to maintain the terms and conditions of this agreement, will require the Employer to pay liquidated damages to the affected employees equal to two months wages.

**5.5.**  When an Employer bids on work covered by this Agreement, the Union will provide to all invited bidders within five (5) business days after receipt of their written request, the information described in the 5.3 above.  Inaccuracies in the information provided by the incumbent Employer shall not excuse any obligations under this agreement of the Employer acquiring the account/location.

**5.6.** The Employer shall provide the Union within five (5) business days of taking over the account/location the names, rates of pay, hours and other benefits provided at the location.

**5.7.** If the Employer loses the account/location all accrued vacation benefits shall be included in a separate check. The successor Employer's obligation for benefits shall commence to accrue on the date that it takes over the account/location. The successor employer shall permit an employee, upon request, to take unpaid leave equal to the accrued vacation time which the predecessor employer paid to the employee, because of the turnover in the account.

## ARTICLE 6
## SENIORITY AND BUMPING

**6.1.** After completion of the probationary period, an employee shall attain seniority as of his date of employment. Seniority of an employee shall be based upon total length of service with the Employer or in the location, whichever is greater. Location shall be defined as the building or buildings located in the same complex covered by the same contract between the Employer and the managing agent or owner.

11

**6.2.**  In the event of a layoff due to a reduction in force, the inverse order of classification seniority, where applicable, shall be followed. Classifications shall not be based on the hours that employees work.  In the event of bumping, there shall be no more than one bump.  For layoffs within a building, seniority shall be based upon total length of service in the building.

**6.3.**  In the event of a layoff due to the loss of a building to a non-union employer, 90 days after the lay-off or reduction from the location (as defined in 6.1), employees with more than two years seniority may bump the least senior employee within their classification within the County within which they were employed.

**6.4.**  Seniority shall continue to accrue while an employee is on leave of absence for less than six months, or for up to one year for employees laid off or covered by a workers compensation claim.

**6.5.**  Seniority rights are lost if any employee quits, is discharged for cause, fails to report or communicate within five (5) days after notice of recall or is otherwise terminated or laid-off  for more than one year.

12

**6.6.** Seniority shall prevail for the assignment of vacation selections. Overtime shall be offered to all employees in rotation by seniority. Nothing in this provision is intended to prevent the Employer from offering extra hours to part-time employees rather than to full time employees where the latter would receive overtime pay for those hours.

**6.7.** There shall be no transfer of employees from one location to another without the Union's consent.

**6.8.** The Shop Steward shall have super-seniority for the purposes of layoff and recall, and may exercise it as long as he is qualified to do the remaining work to be determined by the Employer.

**6.9.** Employees laid off shall have recall rights for up to six (6) months to open positions in locations within the County within which they were employed when laid off.

## ARTICLE 7
## WORKLOAD/REDUCTIONS

**7.1.** No employee shall be assigned an unreasonable workload.

13

**7.2.** The Employer shall not reduce the workforce assigned to any location either through attrition or lay-off without meeting with the Union first, such meeting to take place on an expedited basis, but no later than five (5) business days following the Employer's request.

## ARTICLE 8
## LEAVES OF ABSENCE

**8.1.** Employees may request a sixty (60) day Personal or Emergency Leave if they have been employed at least 12 months. The employee must request Personal Leave in writing thirty (30) days prior to the date of the requested leave. The Employer shall not unreasonably withhold approval of such leave providing that the leave is compatible with the proper operation of the location. Emergency Leave may be requested on an emergency basis, provided that upon the employee's return to work the employer may request documentation of the emergency. No employee shall be entitled to a personal leave of absence more than once in a 12 month period, unless otherwise required by law.

**8.2.** Employers shall provide employees with leaves of absence for union related activities, where practicable, provided that such leave shall

14

not be unreasonably denied. The Union and the Employer shall discuss the number and duration of such leaves of absence in any period of time.

**8.3.** The Employer will comply with the provisions of applicable state and federal Family Leave laws regardless of the number of employees employed at any location or by the Employer.

## ARTICLE 9
## BEREAVEMENT PAY AND JURY DUTY

**9.1.** In the event of a death in the employee's immediate family (parent, spouse, child, brother or sister) the employee shall receive the next three succeeding days off from the date of death and shall be paid for any time lost from his regular schedule as a result of such absence.

**9.2.** In the event of a death in the employees' spouse's family (mother-in-law, father-in-law, sister-in-law, brother-in-law) the employee shall

receive one day off for the purpose of attending the funeral and shall be paid lost time due to such absence.

**9.3.** An employee may be required to submit proof of death and/or that the deceased was within

15

the class of relatives specified and/or that the employee attended the funeral.

**9.4.** An employee who has completed his probationary period and who is required to report to court to answer a jury summons or serve as a juror on days he is regularly scheduled to work will be reimbursed the difference between the amount he receives for jury service and his regular pay. Jury Duty pay shall be limited to two weeks in any year. No employee may be required to work on a day he has jury duty.

## ARTICLE 10
## SICK LEAVE

**10.1.** Beginning with an employee's twelfth month of employment, all employees shall receive a minimum of four paid sick days per calendar year except in an employee's first year of employment when he shall be entitled to a pro rated number of sick days for the time between the first day of his sixth month of employment to the end of the calendar year. Sick leave not used by the end of the year shall not be carried over to the following year.

# ARTICLE 11
# VACATIONS

**11.1.** All employees shall accrue vacation with pay in accordance with the following schedule:

| Months on Payroll | Vacation with Pay |
|---|---|
| 6 months | 3 days |
| 1 year | 1 week |
| 2 years | 2 weeks |
| 5 years | 3 weeks |
| 15 years | 4 weeks |
| 25 years | 5 weeks |

**11.2.** An employee who leaves his job on his own accord or who is terminated shall be entitled to his accrued vacation pay and any other accrued benefits.

**11.3.** Vacation pay shall be paid in advance of the vacation period and shall be based on the employee's straight time hourly rate immediately preceding the vacation period.

**11.4.** If a holiday falls during a scheduled vacation the employee at his or her option shall receive either an extra day's pay or an extra vacation day off with pay.

17

**11.5.**  Time off for vacations shall be scheduled giving preference by seniority.  The number of employees who may take vacation at any given time shall be at the discretion of the employer.

**11.6.**  Employees who are absent for more than thirty (30) days per calendar year shall have their vacation pay pro rated.

## ARTICLE 12
## HOLIDAYS

**12.1.**  The following holidays are designated as paid holidays for post-probationary employees: New Years Day, Labor Day, Floating Day, Thanksgiving Day, Christmas Day, Independence Day, Memorial Day. In the event a building is only closed for six holidays per year, then the employer will not be required to pay for the Floating Day. The date of the Floating Day will be decided in accordance with the needs of the building. Whenever any of these stated holidays shall fall on a Saturday or Sunday, it shall be observed on the following Monday or the preceding Friday depending upon when the building is closed.

**12.2.**  Holiday pay shall be equal to an employee's regular straight time pay.  An employee required to work on a holiday shall

18

receive his regular pay plus holiday pay. In order to be eligible to receive holiday pay, an employee must have worked at least two days in the week prior to the holiday.

## ARTICLE 13
## THE WORKWEEK

**13.1.** The workweek for full time employees shall consist of five consecutive days, Monday through Sunday.

**13.2.** The work day for full time employees shall be eight hours with a one half hour unpaid lunch period as close to the middle of the shift as practical. All full-time employees shall be allowed one 15 minute paid relief period during each eight hours worked. Nothing in this Article is intended to preclude the union and the employer from agreeing to a non-consecutive work week for any employee.

**13.3.** Any work performed in excess of forty hours in a week shall be paid at time and one half the employee's regular rate.

**13.4.** If an employee is required to report to work, such employee shall receive up to four hours pay, but not more than one day's pay, unless work

19

is unavailable because of an Act of God, such as fire, flood, blackout or meteorological event.

**13.5.**   No employees employed on a five day schedule shall be hired or scheduled to work less than twenty (20) hours per week except for those employees on a weekend schedule.   In cases where an Employer currently employs workers below twenty (20) hours, the Union and the Employer shall meet to facilitate a smooth transition, where possible to the twenty (20) hour work week. Employees employed on the effective date of this Agreement who work less than twenty (20) hours per week shall not be required to increase their hours contrary to their will.   No employee's scheduled hours may be reduced without agreement with the employee and the Union or valid specification change from building management that would require a reduction in hours of least senior employees.

**13.6.**   All wages, including overtime, shall be paid weekly in cash or check with an itemized statement of payroll deductions. If a regular pay day falls on a holiday, employees shall be paid on the preceding day.

20

# ARTICLE 14
# UNIFORMS

**14.1.**  The Employer will continue the policy of providing uniforms where now in use. The uniforms shall be furnished without cost to the employees.

# ARTICLE 15
# BULLETIN BOARDS

**15.1.**  Where permission is granted by the building owner/manager, the Employer shall furnish a bulletin board at a conspicuous location in each of the Employer's locations and shall permit representatives of the Union, including stewards, to post notices pertaining to Union affairs on the bulletin board.

# ARTICLE 16
# VACANCIES AND PROMOTIONS

**16.1.**  The Employer shall post all vacancies. Preference in filling vacancies shall be given to employees already employed in a building based on building seniority, but skill, ability and qualifications shall also be considered. Part-time employees shall be given preference by seniority in bidding for open full-time positions.

# ARTICLE 17
# MILITARY SERVICE

**17.1.**  The standing of any employee shall not be prejudiced by service in the Armed Forces of the United States, and any employee shall regain his former position (or equivalent) and seniority upon his return, replacing, if necessary, the least senior employee.  The Employer will comply with all provisions of the Uniformed Service Employment and ReEmployment Act of 1994.

# ARTICLE 18
# SUPERVISORS

**18.1.**  Supervisors shall not perform bargaining unit work except when instructing employees or during emergencies caused by circumstances beyond the control of the Employer. Supervisors shall not displace any employee. Bargaining Unit work performed by Supervisors upon execution of this Agreement shall continue to be performed by Supervisors.

# ARTICLE 19
# SHOP STEWARDS

**19.1.**  The Employer recognizes the right of the Union to designate one Shop Steward per

22

building or one per building complex per shift. The authority of the Shop Steward designated by the Union shall include, but not be limited to, the following duties and activities which shall be performed in a manner which does not interfere with employees or the Shop Steward's work duties: a. The investigation and presentation of grievances in accordance with the provisions of the agreement; b. the transmission of such messages and information which shall originate with and are authorized by the Union. The Shop Steward shall perform his or her duties while on work time in a manner that does not unreasonably interrupt the Employer's operation. Stewards shall have no authority to take any strike or other action interfering or interrupting the Employer's business. The Employer recognizes these limitations upon the authority of Shop Stewards and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline including discharge in the event the Shop Steward has taken unauthorized strike action, slow down or work stoppage in violation of this agreement.

# ARTICLE 20
## SEIU LOCAL 32BJ
## CONNECTICUT DISTRICT HEALTH
## AND WELFARE FUND

**20.1.** The Employer shall contribute for all full-time employees (defined as 35 hours per week or above) after ninety (90) days of full-time employment for each full month of employment to the SEIU Local 32BJ Connecticut District Health and Welfare Fund ("Fund") per the following schedule:

Effective January 1, 2005 - $345.00 per month

**20.2.** The Employer shall make monthly deductions from those employees who authorize such deductions in writing for the purpose of providing insurance coverage through the Fund for the employee and/or the employee's dependents.

**20.3.** The Employer shall make the contributions provided for in 20.1. based on scheduled hours for any employees not at work and/or not receiving pay due to illness (not to exceed 6 months) and shall contribute to pay health insurance premiums in accordance with all statutory requirements in the event a worker is out due to a worker's compensation claim.

24

**20.4.**    The Employer shall make contributions to the Fund based upon the following: for newly hired employees, contributions shall commence on the first day of the month following the employees completion of ninety (90) days of employment and payment shall be submitted in the following month.

**20.5.**    Contributions to the Fund shall be made in a prompt and timely manner.    Contributions shall be made within twenty (20) days after the end of the month for which the payment is due.

**20.6.**    The Employer agrees that should there be any claim by the Union or any of the Trust Funds mentioned in this Agreement as to any discrepancies or disputes concerning the payment by the Employer to the respective Funds, that they or their representatives shall have the right on reasonable notice to examine the Employer's books at the Employer's office concerning such discrepancies or disputes, including payroll books, hours or work records, or other records pertaining to the number of employees and/or hours worked or paid for.    There shall be no cessation for any reason whatsoever (no lapse of time) of payments provided to be made to any or all of the Trust Funds mentioned in this Agreement.

**20.7.**    The Employer hereby agrees to execute whatever documents are legally necessary in order to contribute to the SEIU Local 32BJ Connecticut District Health and Welfare Fund or another designated Fund by the Union.

**20.8.**    The Fund is now being administered by Trustees, an equal number of whom have been appointed by Employers, and an equal number of whom have been appointed by the Union and shall continue to be so administered.  The Employer hereby authorizes the persons (or their successors or others chosen to act in their place and stead) presently designated and acting for the employers as chosen by employer associations to act as Trustees of the Funds, to be the representatives of the Employer, with the same force and effect as if the Employer designated said persons individually and agrees further that any vacancy which occurs may be filled in like manner.

### ARTICLE 20A
### BUILDING SERVICE 32BJ
### HEALTH FUND

**20A.1.**  The Employer agrees to make payment into a health trust fund, known as the "Building Service 32BJ Health Fund" to cover employees covered by this Agreement and/or group life

26

insurance coverage under such provisions, rules and regulations and for such benefits as may be determined by the Trustees of the fund, as provided in the Agreement and Declaration of Trust, at the contribution rates provided for herein.

**20A.2.** Employees who are on workers' compensation or who are receiving disability benefits or disability pension shall be covered by the Health Fund until they may be covered by Medicare or thirty (30) months from the date of disability, whichever is earlier.

**20A.3.** Effective January 1, 2006, the rate of contribution to the Fund shall be $487 per month for each regular full-time employee. Effective January 1, 2007, the rate of contribution to the Fund shall be $544 per month for each regular full time employee.

**20A.4.** For purposes of Health Fund contributions, full-time employees shall be defined as those employees regularly employed 27 and one-half hours or more per week.

**20A.5.** Any Employer who has a plan in effect prior to the effective date of this Agreement which provides health benefits the equivalent of, or better than, the benefits provided for herein, and the cost

27

of which to the Employer is at least as great, may cover its employees under this existing plan or under this Fund. If the Trustees decide the existing plan does not provide equivalent benefits, but does provide health benefits superior to one or more types of health benefits under this Fund, the Employer may participate in the Fund wholly, or partially for hospitalization and/or surgical coverage, and make its payments to the Fund in the amount determined by the Trustees uniformly for all similarly participating Employers.

**20A.6.** If during the term of this agreement, the Trustees find the payment provided herein is insufficient to maintain benefits, and adequate reserves for such benefits, they shall require the parties to increase the amounts needed to maintain such benefits and reserves. In the event the Trustees are unable to reach agreement on the amount required to maintain benefits and reserves, the matter shall be referred to arbitration.

**20A.7.** Effective March 1, 2007, the Employer shall contribute $20 per month for each regular part-time employee to be used for a prescription drug card benefit to be established by the Trustees.

**20A.8.** Effective September 1, 2007, the Employer shall contribute $40 per month for each

28

regular part-time employee to be used for a prescription drug card benefit to be established by the Trustees.

**20A.9.** If the Employer fails to make required reports or payments to the Fund, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Fund's Trust Agreement, and any and all expenses of collection, including but not limited to counsel fees, arbitration costs and fees, court costs, fees and interest.

**20A.10.** Where a contributing Employer is regularly and consistently delinquent, the Trustees in their discretion may require such security as they deem necessary.

**20A.11**. The Trustees of the Funds shall make such amendments to the Trust Agreement, and shall adopt such regulations, as may be required to conform to applicable law, and which shall in any case provide that employees whose work comes within the jurisdiction of the Union (which shall not be considered to include anyone in an important managerial position) may only be

29

covered for benefits if the building in which they are employed has a collective bargaining agreement with the Union. Any dispute about the Union's jurisdiction shall be settled by the Arbitrator if the parties cannot agree.

**20A.12.** Employees hired after December 31, 2005 shall have a waiting period of six (6) months before becoming eligible to be participants in the Funds, and no contributions shall be made on behalf of the employees over the six month period.

## ARTICLE 21
## WAGES

**21.1.** The minimum hourly wage rates for all employees in 2005 shall be as follows:

|           | 1/1/05 | 7/1/05 | 9/1/05 |
|-----------|--------|--------|--------|
| Full Time | 10.00  | 10.00  | 10.00  |
| Part Time | 9.00   | 9.50   | 9.75   |
| New Hire  | 8.00   | 8.50   | 8.75   |

All employees already receiving higher than the minimum rate at the time of the scheduled increases in the wage rate shall receive an increase

30

in their rate of pay equal to the scheduled increase in the minimum rate, e.g. 25 cents or 50 cents, as the case may be.

**21.2.**    All incumbent full-time employees (those employees regularly scheduled 35 hours a week or more) as of January 1, 2006 shall receive the following minimum hourly rates:

**21.2.1.**  Effective January 1, 2006, $10.20

**21.2.2.**  Effective July 1, 2006, $10.35

**21.2.3.**  Effective January 1, 2007, $10.55

**21.2.4.**  Effective July 1, 2007, $10.75

**21.3.**    Effective January 1, 2006, the minimum wage rate for all non red-circled cleaners shall be $9.95 per hour.    Effective July 1, 2006, the minimum wage rate for all non red-circled cleaners shall be $10.10 per hour.    Effective January 1, 2007, the minimum wage rate for all non-red circled cleaners shall be $10.30 per hour. Effective July 1, 2007, the minimum wage rate for all non red-circled cleaners shall be $10.50 per hour.  There shall be a $1.00 differential between the start rate and the minimum rate for cleaners.

31

**21.4.**  All employees, including "red-circled" employees, shall receive the minimum hourly wage rate provided above or the following annual increase, whichever results in a higher rate of pay:

**21.4.1.**  Effective January 1, 2006, $.20

**21.4.2.**  Effective July 1, 2005, $.15

**21.4.3.**  Effective January 1, 2007, $.20

**21.4.4.**  Effective July 1, 2007, $.20

**21.5.**  The minimum rate for leadpersons shall be $.50 cents an hour more than the minimum rates set forth above.

**21.6.**  The minimum rate for all cleaners shall be at all times at least fifty (50) cents above the statutory minimum wage for cleaners in that county or portion thereof.

## ARTICLE 22
## SUCCESSORS, ASSIGNS
## AND SUBCONTRACTING

**22.1.**  The Employer shall not subcontract, transfer, lease or assign, in whole or in part, to any other person, firm, corporation, partnership, or

32

non-unit workers, bargaining unit work presently performed or hereafter assigned to employees in the bargaining unit, except to the extent required by government regulations regarding minority or female owned enterprises, in which event the Employer shall ensure that such enterprises employ bargaining unit employees under the wages and benefits provided under this Agreement.

**22.2.** In the event the Employer sells or transfers all or any part of its business or accounts which are subject to this Agreement, the Employer shall require the acquiring employer to assume this Agreement.

**22.3.** To the extent permitted by law, this agreement shall be binding on any other entities that the Employer, or its principals, establishes or operates which perform work subject to this Agreement.

# ARTICLE 23
# NON-DISCRIMINATION

**23.1.** There shall be no discrimination against any employee by reason of race, creed, color, age,

33

disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law.

# ARTICLE 24
# MOST FAVORED NATIONS

**24.1.** If the Union agrees to different economic terms and conditions more favorable to the Employer at any location, those terms and conditions shall apply to any other Employer who takes over that location for the duration of the Union's agreement with the prior Employer.

**24.2.** In the event the Union enters into a contract on or after December 1, 2007 within the geographic scope of 1.1. above (except for buildings/facilities for which 1.1. authorizes rider agreements), whose economic terms or conditions are more favorable to such Employer than the terms contained in this agreement with respect to that building, the Employer shall be entitled to and may have the full benefit of any and all such more favorable terms for any of its similar buildings within the area defined in 1.1. above upon notification to the Union. This clause shall not

apply to contracts entered into before December 1, 2007 even if the terms of any such contracts extend beyond that date.

## ARTICLE 25
## PRIOR BETTER TERMS
## AND CONDITIONS

**25.1.**    At any location where the Employer is currently maintaining terms and conditions that are more favorable to employees (or some of them) than those provided for in this Agreement for that location, those terms and conditions shall continue to apply to the affected employees unless the Union and the Employer otherwise provide.

**25.2.**    All rider agreements currently in effect whose terms extend beyond December 31, 2004, shall remain in effect, except that fund contributions provided for in any such rider shall be made on the dates provided for in the Rider at the rates in effect on those dates as provided for in this Agreement.

## ARTICLE 26
## PICKET LINE/NO STRIKE CLAUSE

**26.1.**  No employee covered by this Agreement shall be required to pass lawful primary picket

lines established in an authorized strike, including picket lines established by Local 32BJ pursuant to an authorized strike at another job location. The Employer may not permanently replace or discipline any employee who refuses to pass such a picket line.

**26.2.** There shall be no lockouts, and no strikes except that the Union may call a strike or work stoppage (a) after forty-eight hours written notice where the Employer has violated Article 1 of this agreement, (b) where the Employer fails to comply with an Arbitrator's Award within three weeks after the Employer's receipt of the award, or (c)

after forty-eight hours written notice where the Employer has failed provide the Union with information or notices required by Article 5 above.

**26.3.** The Employer shall provide staffing information to the Union upon its request for any job which it currently services within five (5) business days of the request. If such information is not provided, the Union shall have the right to engage in a work stoppage until such information is supplied. During the period of work stoppage the employees shall continue to receive their regular wages and benefits.

# ARTICLE 27
# WORK AUTHORIZATION AND STATUS DISPUTES

**27.1.** Recognizing that questions involving an employee's immigration/work status or personal information may arise during the course of his/her employment, and that errors in an employee's documentation may be due to mistake or circumstances beyond an employee's control, the Employer agrees to the following: in the event an issue or inquiry arises involving the immigration status or employment eligibility of a non-probationary employee, the Employer shall promptly notify the employee in writing and forward a copy of the notification to the Union. If permissible under applicable law and/or regulations, the affected bargaining unit member shall be afforded reasonable opportunity to remedy the identified problem or to secure acceptable documentation demonstrating that the identified problem is in the process of review or correction before adverse action is taken. Any lawful changes in the employee's documentation or lawful correction in his/her social security number shall not be considered new employment or a break in service. If the bargaining unit member does not remedy the issue within 4 months, the bargaining unit member may be discharged and the Employer

37

shall have no further obligation to hold a bargaining unit member's position. If the bargaining unit member obtains the valid documentation referenced above, when necessary, he/she will, consistent with the operational needs of the Employer, be permitted reasonable unpaid time off to attend relevant proceedings or visit pertinent agencies, for the purposes of correcting the identified problem, provided the Employer is given adequate notice of planned absences and verification of appointments, hearings or other proceedings for which time off is requested. A "no-match" letter from the Social Security Administration shall not itself constitute a basis for taking adverse employment action against an employee or for requiring an employee to verify work authorization, subject to applicable law and/or regulation. Employees placed on administrative leave to address work authorizations issues, shall not be required to be paid, but may use any accrued paid leave during that time.

## ARTICLE 28
## COMPLETE AGREEMENT

**28.1.** This Agreement contains the entire agreement between the Union and the Employer and replaces any prior agreements between them,

except that the economic terms of any rider or other agreements shall remain in effect for the duration of the rider or other agreement or until such agreement is re-negotiated.

# ARTICLE 29
# MANAGEMENT RIGHTS

**29.1.**    The Union recognizes, subject to the provisions of this agreement, the right of management to manage the business and direct the working force including, but not limited to, the right to determine the following:

1. Reasonable work rules
2. Work load
3. Standards of quality of performance
4. Hiring Methods
5. Assign and transfer employees
6. To lay off employees because lack of work or other reasons
7. To discipline or discharge employees for just cause
8. The promotion of employees
9. Staffing levels
10. Job Assignments
11. Work Schedules

**29.2.** Subject to the provisions of this agreement, the Employer shall have the right to manage and direct its business, direct the working force, plan, direct and control its operations, hire, promote, discipline, suspend or discharge for just cause. It is agreed that these enumerations of management rights set forth in this Article shall not be deemed to exclude other rights not enumerated, provided nothing is done in violation of the terms of this agreement.

## ARTICLE 30
## DURATION

**30.1.** This agreement shall terminate on December 31, 2007.

**30.2.** Upon the expiration date of this agreement as set forth above, this agreement shall thereafter continue in full force and effect for an extended period until a successor agreement shall have been executed. During the extended period, all terms and conditions hereof shall be in effect subject to the provisions of this paragraph. During the extended period, the Employer shall negotiate for a successor agreement retroactive to the expiration date, and all benefits and improvements in such successor agreement shall be retroactive, if such agreement shall so provide. In the event the parties are unable to agree upon terms of a

40

successor agreement, the Union upon three (3) days oral or written notice to the Employer, may engage in any stoppage, or strike without thereby terminating any other provision of this agreement, until the successor agreement is concluded.

# SIDE LETTERS

1.    The Union agrees that, notwithstanding Article 20A.6., the Employer will not be required to increase its contribution rate pursuant to that section by more than 5% in 2007.

2.    The Employer will not be required to make benefit fund contributions for employees who are on leaves of absence, except as required by the Family Medical Leave Act.

# SIDE LETTER ON BI-WEEKLY
# PAY SYSTEMS

Employers who currently maintain lawfully established bi-weekly pay systems shall not be required to convert their existing accounts/locations to a weekly system until December 31, 2007.

# SIDE LETTER ON TRANSFERS

If a customer, in writing, bars an employee from a location, but the Employer lacks good cause to terminate the employee, the Union and the Employer shall meet to discuss an alternative assignment for the employee that protects the employee's hours, wages and benefits. If no such assignment is available or can be agreed upon, then the dispute shall be resolved in accordance with the provisions of the collective bargaining agreement.

# NOTES

# NOTAS

# 32BJ BENEFITS

# Quick Guide to Completing the Remittance Report

Building Service 32BJ Benefit Funds



*Metropolitan Funds*

**cool** 32BJ Benefit Funds
Coordinated Operations On-Line

*October, 2003*

# The New Remittance Report

Questions?  Call: (212)388-3066 • Page 2



SAMPLE

*Page 11*

## Prorated Rate Lookup Reference Chart 2004

### Prorated Rate Lookup Reference 2004 Metropolitan Funds

| Days worked | Days x 0.05 | Health (561.22/mo) | Legal (18.63/mo) | Training (12.13/mo) |
|---|---|---|---|---|
| 1 | 0.05 | 28.06 | 0.93 | 0.61 |
| 2 | 0.10 | 56.12 | 1.86 | 1.21 |
| 3 | 0.15 | 84.18 | 2.79 | 1.82 |
| 4 | 0.20 | 112.24 | 3.73 | 2.43 |
| 5 | 0.25 | 140.30 | 4.66 | 3.03 |
| 6 | 0.30 | 168.36 | 5.59 | 3.64 |
| 7 | 0.35 | 196.42 | 6.52 | 4.25 |
| 8 | 0.40 | 224.48 | 7.45 | 4.85 |
| 9 | 0.45 | 252.54 | 8.32 | 5.46 |
| 10 | 0.50 | 280.60 | 9.31 | 6.07 |
| 11 | 0.55 | 308.66 | 10.24 | 6.67 |
| 12 | 0.60 | 336.72 | 11.17 | 7.28 |
| 13 | 0.65 | 364.78 | 12.10 | 7.88 |
| 14 | 0.70 | 392.84 | 13.03 | 8.49 |
| 15 | 0.75 | 420.90 | 13.96 | 9.10 |
| 16 | 0.80 | 448.96 | 14.89 | 9.70 |
| 17 | 0.85 | 477.02 | 15.82 | 10.31 |
| 18 | 0.90 | 505.08 | 16.75 | 10.92 |
| 19 | 0.95 | 533.14 | 17.68 | 11.52 |
| 20 | 1.00 | 561.22 | 18.63 | 12.13 |

For Health, Legal and Training Fund reporting, a prorated formula is used in the case of partial months worked to determine contributions. Partial months worked may occur when an employee becomes eligible or is suspended or terminated mid – month. According to this formula, one (1) day's work shall equal 0.05 of any month. Calculate the number of days worked in the partial month. Look-up that number under the days worked column. Go across to the 0.05 column and add that number to any completed month worked. Depending on the period being calculated this number should be entered into the months or advance months column. To find the total contribution for these Funds, multiply the given rate by the time unit (0.05 x number of days worked) and write this total in the *Total* column.

cool  328 J Benefit Funds
Coordinated Operations On-Line



Questions?  Call: (212)388-3066     •     *Page 10*

## Charts

### Job Class Code

| | |
|---|---|
| EM: | Electrician or Mechanic |
| ES: | Elevator Starter |
| EN: | Engineer |
| FP: | Foreperson |
| SC: | Superintendent (Commercial) |
| SR: | Superintendent (Residential with more than 5 employees) |
| SU: | Superintendent (Residential with 5 or fewer employees) |
| WC: | Window Cleaner |
| GU: | Guard |
| HP: | Handyperson |
| OT: | Other* |
| RW: | Replacement Worker |

*For the positions cleaning person, doorperson, elevator operator, fire safety director, exterminator, gardener, matron, porter, security employee, watchperson, or any position not listed here use the code for Other.

### 2003-04 CONTRIBUTION RATE CHARTS

#### METROPOLITAN PLAN

| | | 2003 | 2004 |
|---|---|---|---|
| Health Fund | Monthly | $517.89 | $561.22 |
| | Annual | $6,214.64 | $6,734.64 |
| Pension Fund | Weekly | $42.15 | $43.75 |
| Legal Fund | Monthly | $18.63 | $18.63 |
| | Annual | $223.60 | $223.60 |
| Profit Sharing (SRSP) | | | |
| Commercial | Weekly | $12.00 | $13.00 |
| Residential | Weekly | $10.00 | $10.00 |
| Engineer | Hourly | $2.60 | $2.60 |
| Electrician/Mechanic | Hourly | $1.40 | $1.40 |
| Training Fund | Monthly | $12.13 | $12.13 |
| | Annual | $145.60 | $145.60 |

---





•  *Page 3*

## Instructions (Sections 1-7)

A sample of the new remittance report is provided on the opposite page. To better understand how to complete the new report, the sample has been divided into seven (7) sections. Instructions for completing each section are given below.

### Section 1

The Tax ID Number (TIN) or Employer ID Number (EIN) and full address should be shown, as above. Make sure the number, name and spelling of the employer appear correctly. If no information is provided, or another entity is responsible for payroll and remittance reporting, report these changes immediately to the Funds using an Employer Census Form.

### Section 2

The following information is provided in Section 2: due date for the report, the period(s) for which the employer is reporting (monthly, quarterly or both), the Funds to which the employer is required to make contributions; the account number assigned to the employer, the address of the building for which the employer is reporting. *If any of this pre-indicated information is wrong, please notify the Fund immediately by filing an Employer Census Form.*

Also, please verify that a receipt number is provided (which identifies the employer's account with the Funds), and that the **current payment period** is correct.



**cool** 32BJ Benefit Funds
*Coordinated Operations On-Line*

• *Page 9*

As long as the Funds are notified within 30 days of a termination or suspension, the employer will not be charged for contributions after the date of termination or suspension. However, if the Funds are not notified within 30 days of termination or suspension, then the employer is obligated to contribute until the date the Funds receive the notice.

## How to Account for Employees

There are three codes used to identify employee transactions:

- *Hire*
- *Suspend*
- *Terminate*

Employers need to assign one of these codes when reporting employee status changes, either in the *Employee Status* section of the remittance report, or when completing an Employee Status Change Form. Please refer to the following Employee Status Change Code Chart:

## Employee Status Change Code Chart

*HIRED Status (for new employees or employees returning to covered employment)*

| | |
|---|---|
| HI | Hired |
| RI | Reinstated |

*SUSPENDED Status*

| | |
|---|---|
| AR | Arbitration |
| FM | Family Medical Leave of Absence |
| LA | Leave of Absence |
| ML | Military Leave |
| SD | Short-term Disability |
| WC | Worker's Compensation |

*TERMINATED Status*

| | |
|---|---|
| RE | Retired |
| TE | Terminated |
| TR | Transferred |

---

Questions?    Call: (212)388-3066    •    *Page 4*

*For Sections 3-6, refer to the following example:*

SAMPLE

| Employee Last Name SSN | | | | | | Comments/Date | Hours | Wks | Months | | Wages | 401k |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Santos 123458789 | E | ST | F | Y | | | 520 | 13 | 3 | | $9718.80 | $200.00 |
| Kim 234587890 | | OT | F | Y | | | 520 | 13 | 3 | | $8887.20 | $90.00 |
| Jackson 345878901 | | OT | F | Y | | | 400 | 13 | 3 | | $6140.80 | $120.00 |
| Rodriguez 456789012 | | OT | F | Y | TE | 8/6/03 | 260 | 6 | 1.3 | 440 | $5409.60 | $0 |
| Greco 567890123 | | OT | F | Y | TE | 10/14/03 | 460 | 13 | 3 | 4 0.65 | $7801.60 | $0 |
| Marin 678901234 | F | SU | F | Y | SD | 4/20/03 | 0 | 0 | 0 | 0 | $0 | $0 |
| Wang 789012345 | S | OT | F | N | HI | 9/15/03 | 280 | 7 | 1.5 | 3 | $4746.80 | $0 |
| | | | | | | **TOTALS** | 2500 | 65 | 14.8 | 12.65 | | $400.00 |

Section 3
The following information about all current employees should be preprinted in Section 3 of the form: name, social security number, job classification and employee status (full time, part time and experience). Carefully confirm all given information. If any information is incorrect, please notify the Funds using an Employee Status Change Form.

NOTE: Please add to the report any current employees who do not appear (see page. 10 for a list of Job Class codes).

Also, if employment status has changed for any employees since the last submitted report, please indicate the appropriate code and date the change was made effective.

# Employer Obligations

## Reporting an Employee
It is important that all employers immediately report to the Fund any employee who is working under a collective bargaining agreement that stipulates contributions be made for any of the following funds:

- Health
- Pension
- Legal
- SRSP (Profit Sharing and/or 401k)
- Training (Training and Scholarship)

• All employees must be reported to the Fund within 30 days of their date of hire. Employers will not be billed for contributions for any employee until required to by a collective bargaining agreement or participation agreement.

## Reporting Employee Status Changes
All changes in employee status must be reported to the Fund on a Employee Status Change Form. This includes new hires, terminations or suspensions.

Please mail completed forms to:

*Building Service 32BJ Benefit Funds*
*101 6th Avenue*
*New York, NY 10013*

Employers may also email the form to: employerrelations@32bjfunds.com. By Emailing the form the employer has a record that the Funds were appropriately notified.

**Questions? Call: (212)388-3066    •    Page 8**





cool 32BJ Benefit Funds
Coordinated Operations On-Line

•    Page 5

## Section 4
Enter the following information for each employee being reported:

*Hours:* Enter the total number of hours that the employee worked during the reporting period. Hours are collected to determine eligibility for a pension (*any exceptions will be addressed with the effected employers directly*).

*Weeks:* Enter the total number of weeks that the employee worked during the reporting period. A week is counted if an employee works more than 2 days in a given work week. This includes paid leave, such as vacation or sick days, but does not include leaves of absence. If an employee is suspended, he/she should be accounted for in Section 3, but hours, weeks and months should not be accrued.

*Months:* Enter the total number of months that the employee worked during the reporting period. A month is the unit used to determine eligibility for benefits, such as Health, Legal and Training (Thomas Shortman Fund). A month's work is counted if an employee works more than 2 weeks in that month. If an employee becomes eligible or is terminated or suspended during the reporting period, please indicate in the months column the amount of time worked (refer to prorated chart on page 11)

*Advance Months:* The system anticipates that all employees will continue to work into the next reporting period. If that is incorrect, as a result of termination or suspension, please indicate in the advance months column the amount of time actually worked (refer to the prorated chart on page 11)

*Wages:* Enter the total wages (Gross Compensation) that the employee earned during the reporting period.

*401k:* Enter the 401k amount deferred by the employee for the month for which you are reporting.

If a covered employee is absent from work due to illness or accident, include time absent from work as time worked for the **first seven days of absence.**

Paid vacations and paid holidays are considered time worked, but neither a leave of absence, nor a period during which the employee received termination pay, is considered time worked. Under the Family Medical Leave Act (FMLA), a leave of absence is considered time worked for health contributions only.



## Section 5

Add each of the entries in the Hours, Weeks, Months, Advance Months, and 401k columns and enter the totals for each column at the bottom, as shown in the example.

| | | | | | | | Total Current Due |
|---|---|---|---|---|---|---|---|
| $517.89 | 14.8 | $7064.77 | $517.89 | 12.65 | $6551.35 | $8130.87 | $4,985.21 |
| $42.15 | 65 | $2739.75 | | 12.65 | | $292.49 | $2,739.75 |
| $18.61 | 14.8 | $275.57 | $18.61 | 12.65 | $235.47 | | $818.90 |
| $12.00 | 65 | $780.00 | | | | | $780.00 |
| | 65 | $490.00 | | | | | $490.00 |
| $12.13 | 14.8 | $275.58 | $12.13 | 12.65 | $153.44 | $190.44 | $158.52 |

## Section 6

To calculate the amount due to the Funds, first enter the appropriate units of time from Section 5 into the corresponding Time Unit column for each Fund.

### Calculating the Current Due

For **Health, Legal and Training Fund** reporting, enter the total from the Months column in Section 5 into the corresponding Time Unit box in Section 6. *In the given example, the Months column total is 14.8 for each of the three funds.*

For **Profit Sharing Fund (SRSP)** reporting, enter the total from the Weeks column in Section 5 into the corresponding Time Unit box in Section 6. *In the given example, the Weeks column total is 65.* NOTE: Enter the Hours total instead of the Weeks total for Electricians, Engineers and Mechanics ONLY.

For **Pension Fund** reporting, enter the total from the Weeks column in Section 5 into the corresponding Time Unit box in Section 6. *In the given example, the Weeks total is 65.*

To calculate the total Current Due for each Fund, multiply the appropriate Rate by the Time Units entered, and write this amount in the corresponding Total column.

### Calculating the Advance Requirement Payment

For **Health, Legal and Training Fund** reporting, enter the total from the Advance Months Due column in Section 5 into the corresponding Time Unit box in Section 6. *In the given example, the Advance Months Due total is 12.65.*

To calculate the total Advance Requirement Payment, multiply the appropriate rate by the time units entered and write this amount in the corresponding Total column.

### Calculating 401k

For **401k** reporting, enter the total from the 401k column in Section 5 into the corresponding Total box in Section 6. *In the given example, the 401K total is $400.00.*

### Less Previous Advance Payment

The Previous Advance Payment for Health, Legal and Training Funds is provided in the Less Previous Advance Payment box in Section 6. *In the given example, it is assumed that a Time Unit of 15.7 Advance Months was used in the previous reporting period, causing the totals (Time Unit x Rate) to be $8130.87, $292.49 and $190.44, respectively.*

NOTE: If you have credit at any of the Funds, subtract the amount of the credit from the total amount due to that Fund and write the reduced total in the Total Due per Fund column.

### Calculating the Total Due

Add all entries in the *Total Due per Fund* column and enter it in the TOTAL DUE box. **This is the amount that should be remitted to the Funds. Please make one (1) check payable to:**

Building Service 32BJ Benefit Funds
P.O Box 11477
New York, NY 10286-1477

## Section 7

Print your name, title, email address, phone number, and the current date, as indicated. The person responsible for completing the form should sign it.

Building Service 32BJ Benefit Funds

Dekar Industries Inc /shamrock
Contact:
Po Box 22123
St Petersburg, FL 33742-2123

| Statement of Account for Employer Number | Statement Date | Amount you owe as of 1/17/2008 |
|---|---|---|
| 01830 | 1/17/2008 | $1,713,115.88 * |

Listed below is a summary of what is due by account for principal, interest, liquidated damages and fees.

*Make check payable to Building Service 32BJ Benefit Funds*

| Account | Total Principal Due | Interest | Liquidated Damages | Fees | Total Amount Due |
|---|---|---|---|---|---|
| 01830-06252-0016-0184-10 | $39,598.56 | $5,002.84 | $18,912.24 | $0.00 | $63,513.64 |
| 01830-06254-0016-0179-10 | $19,931.49 | $1,843.06 | $7,168.07 | $0.00 | $28,942.62 |
| 01830-06261-0016-0179-10 | $19,384.91 | $1,689.35 | $6,590.13 | $0.00 | $27,664.39 |
| 01830-06263-0016-0202-10 | $68,534.40 | $8,650.07 | $32,704.77 | $0.00 | $109,889.24 |
| 01830-06264-0016-0203-10 | $1,384.20 | $175.75 | $663.12 | $0.00 | $2,223.07 |
| 01830-06291-0016-0193-10 | $157,063.47 | $20,077.01 | $75,875.17 | $0.00 | $253,015.65 |
| 01830-06901-0016-0023-10 | $58,714.39 | $4,102.84 | $16,169.30 | $0.00 | $78,986.53 |
| 01830-06901-0016-0141-20 | $1,305.00 | $187.77 | $704.70 | $0.00 | $2,197.47 |
| 01830-06979-0016-0023-10 | $133,872.36 | $10,619.28 | $40,989.38 | $0.00 | $185,481.02 |
| 01830-06979-0016-0141-20 | $333,701.29 | $21,162.31 | $82,532.30 | $0.00 | $437,395.90 |
| 01830-06980-0016-0023-10 | $164,201.32 | $10,487.37 | $41,010.22 | $0.00 | $215,698.91 |
| 01830-06980-0016-0141-20 | $94.23 | $13.32 | $50.76 | $0.00 | $158.31 |
| 01830-06981-0016-0104-20 | $151,226.27 | $10,590.99 | $41,349.38 | $0.00 | $203,166.64 |
| 01830-07120-0016-0153-10 | $44,955.99 | $2,700.46 | $10,716.43 | $0.00 | $58,372.88 |
| 01830-07166-0016-0163-10 | $33,297.06 | $2,652.81 | $10,459.74 | $0.00 | $46,409.61 |
| Totals | $1,227,264.94 | $99,955.23 | $385,895.71 | $0.00 | $1,713,115.88 |

**Please refer to subsequent pages for detailed Statement of Account by account by fund**

(continued on next page)

Building Service 32BJ Benefit Funds

Building Service 32BJ Benefit Funds

Shamrock Building Services
Contact:
P.o. Box 22123
St Petersburg, FL 33742-2123

| Statement of Account for Employer Number | Statement Date | Amount you owe as of   2/29/2008 |
|---|---|---|
| 02645 | 1/29/2008 | $146,714.80 * |

Listed below is a summary of what is due by account for principal, interest, liquidated damages and fees.

*Make check payable to Building Service 32BJ Benefit Funds*

| Account | Total Principal Due | Interest | Liquidated Damages | Fees | Total Amount Due |
|---|---|---|---|---|---|
| 02645-06124-0018-0001-20 | $18,128.00 | $459.12 | $1,836.48 | $0.00 | $20,423.60 |
| 02645-06125-0018-0001-20 | $660.00 | $11.40 | $45.60 | $0.00 | $717.00 |
| 02645-06127-0018-0001-20 | $13,056.00 | $359.04 | $1,436.16 | $0.00 | $14,851.20 |
| 02645-06128-0018-0001-20 | $16,540.00 | $475.44 | $1,901.76 | $0.00 | $18,917.20 |
| 02645-06129-0018-0001-10 | $1,940.00 | $32.20 | $128.80 | $0.00 | $2,101.00 |
| 02645-06131-0018-0001-10 | $4,192.00 | $63.72 | $254.88 | $0.00 | $4,510.60 |
| 02645-06133-0018-0001-20 | $15,848.00 | $478.96 | $1,915.84 | $0.00 | $18,242.80 |
| 02645-06134-0018-0001-10 | $5,788.00 | $123.04 | $492.16 | $0.00 | $6,403.20 |
| 02645-07326-0018-0001-10 | $280.00 | $6.50 | $26.00 | $0.00 | $312.50 |
| 02645-07327-0018-0001-10 | $9,948.00 | $319.56 | $1,278.24 | $0.00 | $11,545.80 |
| 02645-07328-0018-0001-10 | $26,380.00 | $682.40 | $2,729.60 | $0.00 | $29,792.00 |
| 02645-07463-0018-0001-10 | $880.00 | $16.00 | $64.00 | $0.00 | $960.00 |
| 02645-07464-0018-0001-10 | $420.00 | $6.90 | $27.60 | $0.00 | $454.50 |
| 02645-07465-0018-0001-10 | $4,348.00 | $85.22 | $340.88 | $0.00 | $4,774.10 |
| 02645-07466-0018-0001-10 | $860.00 | $15.10 | $60.40 | $0.00 | $935.50 |
| 02645-07467-0018-0001-10 | $4,968.00 | $176.24 | $704.96 | $0.00 | $5,849.20 |
| 02645-07468-0018-0001-10 | $2,524.00 | $38.72 | $154.88 | $0.00 | $2,717.60 |
| 02645-07469-0018-0001-10 | $280.00 | $6.50 | $26.00 | $0.00 | $312.50 |
| 02645-07471-0018-0001-10 | $2,520.00 | $58.50 | $234.00 | $0.00 | $2,812.50 |
| 02645-07549-0018-0007-10 | $80.00 | $0.40 | $1.60 | $0.00 | $82.00 |
| Totals | $129,640.00 | $3,414.96 | $13,659.84 | $0.00 | $146,714.80 |

**Please refer to subsequent pages for detailed Statement of Account by account by fund**

(continued on next page)