UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BUILDING SERVICE 32BJ HEALTH FUND,
BUILDING SERVICE 32BJ LEGAL SERVICES
FUND, BUILDING SERVICE 32BJ THOMAS
SHORTMAN TRAINING, SCHOLARSHIP AND
SAFETY FUND,

                              Plaintiffs,                         08-CV-00898 (RWS)(JCF)

     -against-

SHAMROCK ACQUISITIONS, CORP. d/b/a
SHAMROCK BUILDING SERVICES AND
SHAMROCKBUILDING SERVICES CORPORATION
d/b/aSHAMROCK BUILDING SERVICES,

                              Defendant.
--------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

       Plaintiffs, Building Service 32BJ Health Fund ("Health Fund"), Building Service 32BJ Legal

Services Fund ("Legal Fund") and Building Service 32BJ Thomas Shortman Training, Scholarship

and Safety Fund ("Training Fund"), herein collectively referred to as the "Funds," by their attorneys

Raab, Sturm, Goldman & Ganchrow, LLP, submit the following Memorandum of Law In Support of

the Order to Show Cause for a Preliminary Mandatory Injunction, as follows:

### INTRODUCTION

       The underlying action was brought under ERISA to compel  contributing employers

to pay the Funds delinquent contributions owed by Shamrock Acquisitions, Corp. d/b/a Shamrock

Building Services and Shamrock Building Services Corporation d/b/a Shamrock Building Services

(jointly referred to as "Defendants"), for contributions on behalf of all of its employees covered under

its Collective Bargaining Agreements ("Agreement") with Service Employees International Union,

Local 32BJ ("Union") and for statutory penalties, including liquidated damages, interest and attorneys

fees.  The instant application seeks a preliminary mandatory injunction compelling Defendants to

submit the periodic monthly Remittance Reports and to pay those sums that Defendants cannot challenge as being owed to the Funds for all periods that they are delinquent in their payments. The necessity of the instant application resulted from a recent event. In recent months the Defendants simply stopped making their monthly contributions to the Funds. During the course of an audit of the Defendants' past compliance, a representative of the defendants advised the Funds' auditor that the Defendants were having financial difficulties. The financial difficulties have been confirmed.

The Funds have therefore brought on this application for a prospective mandatory injunction to compel the Defendant to file all missing Remittance Reports and to pay the Funds the sums required under those Remittance Reports, as well as for a prospective injunction prohibiting Defendants from incurring any future delinquencies in their obligations to the Funds.

## FACTS

This is a civil action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1145), (hereinafter referred to as "ERISA") and Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) (hereinafter referred to as the "Taft-Hartley Act"), by an employee welfare benefit fund, an employee pre-paid legal services benefit fund and an employee training, scholarship and safety benefit fund for injunctive and other equitable relief under ERISA and for breach of contract to secure performance by an employer of specific statutory and contractual obligations to pay and/or submit the required monetary contributions and reports to the Funds and to permit and cooperate in the conduct of audits of the books and records of Defendants and as parties contractually bound by the collective bargaining agreements (as hereinafter defined) by the Funds and/or their designated representatives. The Complaint alleges that by failing, refusing or neglecting to pay and submit the required monetary contributions and/or reports to the Funds when due, Defendants violated its collective bargaining

2

agreements, and the respective trust agreements of the Funds, and ERISA.

## JURISDICTION

Jurisdiction of this Court is invoked under the following statutes:

        (a)      Section 502(e)(1) and (f) of ERISA (29 U.S.C. § 1132(e)(1) and (f);

        (b)      Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185);

        (c)      28 U.S.C. Section 1331 (federal question); and

        (d)      28 U.S.C. Section 1337 (civil actions arising under an Act of Congress regulating commerce).

## VENUE

The Funds maintain their offices in the confines of the Southern District of New York. Venue properly lies in this district under Section 502(e)(2) of ERISA (29 U.S.C. § 1132 (e)(2)), which grants federal jurisdiction in the district where the Funds maintain their offices. Service of process may be made on Defendants in any other district in which they may be found, pursuant to Section 502(e)(2) of ERISA (29 U.S.C. § 1132(6)(2)). Accordingly, service may be made upon Defendants in Florida or in Connecticut.

## PARTIES

The Funds are jointly-administered, multi-employer, labor-management trust Funds established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5)). The Funds are employee benefit plans within the meaning of Sections 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. § 1002(2),(3), and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145). The Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29 U.S.C. § 1132(d)(1)). The purpose of the Funds is to receive contributions from employers who are parties to collective bargaining agreements with Service

3

Employees International Union, Local 32BJ ("Union"), to invest and maintain those monies, and to distribute pensions, health and insurance benefits, and annuity payments to those employees eligible to receive them. The Funds maintain their offices and are administered at 101 Avenue of the Americas, New York, New York 10013, in the City, County, and State of New York.

The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185) which represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C. § 142) and Section 3(4) of ERISA (29 U.S.C. § 1002(4)). The Union maintains its offices and is administered at 101 Avenue of the Americas, New York, New York 10013, in the City, County, and State of New York.

Defendant Shamrock Acquisitions, Corp. d/b/a Shamrock Building Services ("Defendant Acquisitions") was and continues to be a for-profit Florida corporation doing business in various states of the United States, including the States of Florida and New Jersey, as an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and was and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185). Further, Defendant Acquisitions is party to a collective bargaining agreement (hereinafter the "Agreement") with the Union wherein, *inter alia*, Defendant Acquisitions became obligated to pay and/or submit the required monetary contributions and/or reports to the Funds, for Defendant Acquisitions' employees within the unit set forth in the Agreement with the Union.

Defendant Shamrock Building Services Corporation d/b/a Shamrock Building Services ("Defendant Services") was and continues to be a for-profit Connecticut corporation doing business in various states of the United States, including the States of Connecticut and New York, as an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and was and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185). Further, Defendant Services is party to a collective bargaining

4

agreement (hereinafter the "Agreement") with the Union wherein, *inter alia*, Defendant Services became obligated to pay and/or submit the required monetary contributions and/or reports to the Funds, for Defendant Services' employees within the unit set forth in the Agreement with Union.

Defendant Acquisitions and Defendant Services are a "single employer" or a "joint-employer" as they constitute a single integrated employer employing the employees employed under the Agreement with the Union and they both possess the power to control the employees represented by the Union under the above described Agreement.

The Funds commenced this action against Defendants because Defendants have simply stopped paying their monthly contributions to the Funds. Defendants cannot deny that they are party to a collective bargaining agreement ("Agreement") with Service Employees International Union, Local 32BJ ("Union"), wherein Defendants became obligated to pay and/or submit the required monetary contributions and/or reports to the Funds, on behalf of Defendants' employees, who are employed within the unit set forth in the Agreement.

From information provided by Defendants to the Funds and based upon the auditor's findings, the Funds have calculated the amounts owed by Defendants, including principal, interest and liquidated damages. The amounts calculated are for the delinquencies through and including January 2008. Defendants must concede that they owe in principal, ($1,240,224.94) interest, ($103,370.19) and liquidated damages ($399,555.55), the total sum of $1,8,59,829.88.

The respective Funds, under the authority vested in them by the Collective Bargaining Agreement, and their respective trust agreements, have adopted and promulgated rules that require contributing employers, including Defendants, to make the afore-described contributions on a monthly basis. The rules further require the contributing employers, including Defendants, to file monthly Remittance Reports, which identify the individuals on whose behalves contributions are being made. The procedures for filing the Remittance Reports have been codified in a booklet adopted by the

Trustees of the respective Funds.

The contributing employers are required to use the Funds' Remittance Reports when making payment. The Remittance Report forms contain a unique receipt number, that allows for the processing of the information. The Report tells the Funds who is contributing . It identifies the period for which the Report applies. The form provides information on the contributing employer's employees' status with the Funds. The employers are specifically advised that the failure to use the form can result in a delay of the paperwork, thus causing the employer's payment to be deemed late. This will result in the assessment of interest and liquidated damages.

The Funds' records disclose that Defendants regularly failed to make timely payments to the Funds and that Defendants have not submitted the Remittance Reports so as to enable the Funds to properly allocate payments that were received.

As noted, presently Defendants are in arrears to the Funds through January 2008 in an amount of $1,859,829.88, inclusive of principal, interest and liquidated damages. The Funds have a good faith belief that absent a preliminary injunction compelling Defendants to pay those sums that are not disputed as being owed and requiring Defendants to file Remittance Reports and make the corresponding payments, that the ultimate ability of the Funds to collect these sums will be endangered. The belief is based upon the Funds' learning recently that Defendants have simply stopped making their monthly contributions and have admitted to being in financial difficulties.

Based upon the above and the record as a whole, the Funds now move the Court for a preliminary mandatory injunction compelling Defendants to submit all missing monthly Remittance Reports for all periods beginning with January 2006 and to pay all undisputed contributions owed pursuant to those Remittance Reports. The Funds further seek a preliminary injunction to compel Defendants to pay the amounts that cannot be disputed, and for a further order enjoining Defendants from incurring any further delinquencies to the Funds.

6

No prior application has been made for the relief herein requested.

## ARGUMENT

## POINT I

### THE STANDARD FOR PRELIMINARY INJUNCTION IN CASES ARISING UNDER ERISA HAS BEEN MET AND RELIEF IS APPROPRIATE

In the Second Circuit, the standard for a preliminary injunction is:

> It is well established in this Circuit that a party seeking a preliminary injunction must show that it is likely to suffer possible irreparable injury if the injunction is not granted and "either (1) a likelihood of success on the merits of the case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation."

Reuters Ltd. v. United Press Intern., Inc., 903 F.2d 904, 907 (2d Cir 1990) (internal citations omitted).

As for irreparable harm, the Court in Reuters went on to hold:

> Because a showing of probable irreparable harm is "the single most important pre-requisite for the issuance of a preliminary injunction",... the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered. Irreparable harm must be shown by the moving party to be imminent, not remote or speculative,...and the alleged injury must be one incapable of being fully remedied by monetary damages.

903 F.2d at 907 (internal citations omitted). The Second Circuit has held that "...the threatened termination of medical coverage for workers and their families obviously raised the spectre of irreparable injury." Whelan v. Colgen, 602 F.2d 1060, 1062 (2d Cir. 1979); see also Communication Workers of America, District 1 v. Nynex Corp., 898 F.2d 887, 891 (2d Cir. 1990); U.A.W. v. Exide Corp., 688 F.Supp. 174, 186-87 (E.D.Pa.), aff'd mem., 857 F.2d 1464 (3d Cir. 1988). In the context of the legislative history of ERISA, Congress made it quite clear that injunctive relief of the nature being sought is proper. As the Sixth Circuit Court of Appeals summarized in Laborers Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981):

> The legislative history underlying section 502 indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed "to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act." H.R. Rep. No. 93-533, 93d Cong.

2d Sess. 17, *reprinted in* [1974] U.S. Code Cong. & Ad. News p. 4655. This history further states that "[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants." Id.

Thus, on the basis of the plain language of the statute and the attendant legislative history, we hold that Section 502(a)(3), is unambiguous evidence of Congress' express intent to permit federal courts to issue injunctions. Therefore, the district court below had authority under Section 502(a)(3) to enjoin the defendants' misconduct.

This analysis was adopted by the Second Circuit in <u>Iron Workers Dist. Council v. Hudson Steel</u>, 68 F3d 1502, 1506 (2d Cir. 1995). The Second Circuit added upon this analysis by quoting from a staff report of the Senate Committee on Labor and Human Resources as cited in <u>Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.</u>, 522 F.Supp. 919, 921-923 (E.D. Mich. 1981):

"Delinquencies of employers in making required contributions are a serious problem for most multiemployer plans. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans...

Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously...

The public policy of this legislation to foster the preservation of the private multi-employer plan system mandates that provision be made to discourage delinquencies and simplify delinquency collection.

68 F.2d at 1506.

As noted, an employer's defenses to the ERISA action are very limited. "Once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligations by raising defenses that call into question the union's ability to enforce the contract as a whole". <u>Benson v Brower's Moving and Storage Inc.</u> 907 F3d 310, 314 (2nd Cir. 1990).

"ERISA collection cases are exceptions from the general rule of equity that equity will not

enjoin either prohibitively or mandatorily the payment of money." <u>Demolition Workers Union Local 95 Insurance Annuity and Pension Funds v Mac Contracting Corp.</u> 2000 U.S. Dist Lexis 3548*27 (S.D.N.Y. March 22, 2000), citing <u>Central States v Hester</u>, 1984 U.S. Dist Lexis 15454*5-6 (N.D. Ill July 6, 1984.)  <u>Central States</u> stands for the proposition that as a matter of law, a contributing employer's failure to make required contributions compromises the financial soundness of fringe benefit funds and results in irreparable harm. 1984 U.S. Dist Lexis 15154 at *6.  Accord, <u>Laborers Fringe Benefit Funds v Northwest Concrete and Construction Inc.</u>, 640 F.2d 1350 (6th Cir. 1981); <u>Board of Trustees v Dibella Roofing , Inc</u>. 2005 U.S. Dist Lexis 30146*12 (E.D.N.Y. October 26, 2005); <u>King v Nelco Industries</u> 1996 U.S. Dist Lexis 22521 (E.D.N.Y. October 29, 1996).  Courts have consistently ordered  injunctive relief  to be imposed upon employers who ignore their ERISA obligations.  See <u>Demolition Workers</u>,  supra.; <u>MacRoyce,</u> supra. See also, <u>Chartier v J & F Management Corp.</u>, 1992 U.S. Dist Lexis 17853 (S.D.N.Y. November 25, 1992); <u>McCrory  v G.C. Monaco Electric, Inc.</u>, 1989 U.S. Dist Lexis 7573 (S.D.N.Y. July 5, 1989).

The Fund has determined that Defendants owe the Funds $1,227,264.94  in delinquent contributions.  This figure is exclusive of the statutory penalties of interest, liquidated damages and attorneys fees (See ERISA 502 (g)). Adding statutory interest and liquidated damages[1] brings the undisputed amount owed to the Funds to $1,713,115.88.  These unpaid contributions represent the assets of the Fund and as such must be held in trust for the benefit of the participants and beneficiaries of the Pension and Health Funds.

---

[1]

     The Courts have consistently upheld the Funds' formula for assessment of ERISA mandated interest and liquidated damages. See, <u>Building Service 32B-J Health Fund v. Gates Patchen Housing Development Fund Co.</u>, 2005 U.S. Dist Lexis 183 (S.D.N.Y. January 5, 2005); <u>Trustees of the Building Service 32 B-J Pension, Health and Annuity Funds v. Linden Realty Associates,</u> 1995 U.S. Dist Lexis 21438 (E.D.N.Y. May 8, 1995); <u>Trustees of the Building Service 32 B-J Pension Health and Annuity Funds v. Revere Custodial Services,</u> 199 U.S. Dist lexis 17329 (S.D.N.Y. December 2, 1994); <u>Trustees of the Building Service 32 B-J Health Fund v. Triangle Services,</u> 2006 U.S. Dist Lexis 85612 (S.D.N.Y. November 21, 2006)

To the extent that the Defendants will argue inability to pay because of cash flow or other reasons, this argument would only buttress the Fund's right to preliminary injunctive relief. In Hotel Employees & Restaurant Employees v Caucas Club, 754. F. Supp 539 (E. D. Mich 1991), the Court ordered prospective mandatory injunctive relief to compel payments given the precarious financial condition of the delinquent employer. The prerequisites to the issuance of this injunction included findings that the plaintiffs were threatened by some irreparable injury for which they had no adequate remedy at law, and that an injunction would not offend public policy. Laborers Fringe Ben. Funds–Detroit & Vicinity v Northwest Concrete & Constr., Inc 640 F.2d 1350 (6th Cir 1981). The Court was convinced by plaintiff's testimony regarding defendant's precarious financial condition that the funds' legal remedy was not adequate. Absent the proposed injunction, there was reason to believe that the funds might not receive payment and would be thereby irreparably harmed. See, Central States, Southeast & Southwest Areas Pension Fund v Admiral Merchants, Motor Freight, Inc., 511 F. Supp. 38 (D. Minn. 1980), aff'd sub nom. Central States Southeast & Southwest Areas Pension Fund v Jack Cole- Dixie Highway Co., 642 F.2d 1122 (8th Cir 1981). Moreover , the lingering delinquency of contributions to the Funds damages the Funds' ability to meet their continuing fiduciary duty to provide benefits to employees. The Funds' obligations to make payments to participants without receiving corresponding contributions endangers the Funds' financial security. See, Gould v Lambert Excavating, Inc. 870 F.2d 1214 (7th Cir. 1989).

The Funds posit that the proposed injunction would not offend public policy, given Congress' explicit intention in passing ERISA to protect the interest of participants in multiemployer benefit plans from inadequately financed benefit funds. The proposed injunction carries out the public policy expressed in ERISA to secure "the soundness and stability of plans with respect to adequate funds to pay promised benefits....." 29 U.S.C.§ 1001 (a)

The Defendants, appear to be unable to make timely contributions and to timely submit the

10

Remittance Reports. The result is that the Health Fund mayhave to cease paying benefits for employees whose employer refuses or is unable to pay the monthly premiums. By cutting off benefits, the affected employees will suffer irreparable harm. Whelan v. Colgan, 602 F.2d 1060,1062 (2d Cir. 1979); Communication Workers of America v. Nynex Corp., 898 F.2d 887,891 (2d Cir. 1990). Denial or loss of medical benefits is non-compensable in terms of monetary damages. LaForest v. Former Clear Air Holding Company, 376 F.3d 48 (2d Cir. 2004); See Building Service 32 B-J Health Fund v. Laro Service Systems, S.D.N.Y. Docket No. 05-CV-2547 (LAP), order dated July 18, 2005, (copy enclosed).

In an analogous situation, Judge Haight, Jr., found the non-payment of delinquent contributions and the failure to submit remittance type reports, in and of themselves, to constitute irreparable harm so as to entitle a fringe benefit fund to an injunction. Judge Height, Jr. opined:

> To obtain injunctive, relief, plaintiffs must demonstrate that they would suffer irreparable injury absent the entry of such an order. D.C. Paving Indus. Trust v. Jones & Artis Co., 2 e.b.c. 2227 (D.C. 1981). See also Van drivers Union Local No. 392 v. Neal Moving and Storage, 551 F. Supp. 429, 431 (N.D. Ohio 1982 (on motion for preliminary injunction, party seeking relief must demonstrate that it has substantial likelihood of prevailing on the merits; that it will suffer irreparable injury if the relief is not granted; that there will be no substantial harm to other if the relief is granted; and that the public interest will be served by the issuance of the injunction). Id. (citation omitted).

> Here the plaintiff Funds demonstrate irreparable harm in that absent injunctive relief, the Funds would be unable to ensure prompt, regular payment, and other employers would not be deterred from following defendants' lead. It is right in this situation to allow the Funds to use one particularly delinquent employer as an example. If other are also late, the need for court intervention is that much greater, but the Funds should not be compelled to bring court action against each employer who is in arrears. Rather, obtaining judgments against one employer serves as warning to all. Furthermore, this employer's apparent recidivism argues for injunction relief against it. "On the track record of this defendant the injunction is warranted. "Sarver, supra, slip op. At 1. (citation omitted).

> Similarly, public policy interests will be furthered by compelling compliance. ERISA was enacted in part "to provide a financially self-sufficient program for the guarantee of employee benefits under multiemployer plans." Section    302 (a) (4) of ERISA, 29 U.S.C. § 1001a (c) (4). This purpose cannot be furthered in the case at bar absent entry of an order directing Monaco's compliance with the contribution provisions of the agreements.

11

Given, the uncertain future for Defendants (to wit, Defendants' admission as to their precarious financial condition) is sufficient for a finding of irreparable harm.  As Judge Preska, of the Southern District of New York held in <u>Alvenus Shipping Co. v. Delta Petroleum (USA),</u> 876 F. Supp. 482, 487 (S.D.N.Y. 1994):

> As a general rule, irreparable harm is not present when the plaintiff has a claim for money damages... However, an exception to the general rule exists when it is shown that a money judgement will go unsatisfied absent equitable relief (internal citations omitted).

## POINT II

## <u>THE FUNDS WILL LIKELY SUCCEED IN THE AREAS COVERED BY THE PRELIMINARY MANDATORY INJUNCTION</u>

This application is limited to forcing the Defendants to pay only the amounts not in dispute for the period prior to July 1, 2005 and requiring Defendants on a going forward basis to similarly comply with their contractual obligation to remain free from any current and future defaults.  There is no factual dispute, that Defendants are party to a collective bargaining agreement with the Union. There should be  no factual dispute as to the identities of the employees for whom fund contributions are to be paid by the Defendants for the period beginning July 1, 2005. It is unlikely that Defendants will be able to present any substantial factual issues concerning the continued employment of these individual. As a matter of law, the Funds are  entitled to judgment on the issue of Defendants' liability under the agreement.

Pursuant to 29 U.S.C.§ 1145, "every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms of such plan or such agreement". <u>IBEW No. 910 Welfare, Annuity & Pension Plan v. Dexelectronics, Inc.,</u> 98 F. Supp.2d 265, 271 (N.D.N.Y. 2000).  The ability to avoid this statutory

obligation is extremely curtailed, limited to situations where the fund contributions would be otherwise illegal or where the collective bargaining agreement is void. Id.; See, Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir), cert denied, 498 U.S. 982, 112 L. Ed.2d 524, 111 S. Ct. 511 (1990). The Funds posit that given Defendants' inability to challenge the Agreement, which Agreement requires contributions to the Funds, the Funds will most definitely succeed on the issue of liability. Once Defendants file the Remittance Reports, all that need be done is to multiply the contribution figures by the number of reported employees. This amount is thus easily ascertainable and within the exclusive knowledge of the Defendants.

As the calculations of liability can raise no issues of material or genuine fact, and as Defendants' defenses are limited, there is an extremely strong case on the merits and an almost non-existent basis to deny the injunctive relief. See Building Service 32 B-J Health Fund v. Laro Service Systems, S.D.N.Y. Docket No. 05-CV-2547 (LAP), order dated July 18, 2005, (copy enclosed)

### POINT III

### THERE ARE SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS AND THE BALANCES OF HARDSHIPS TIPS DECIDEDLY TOWARD THE FUND

The Funds have demonstrated that they have an extremely high likelihood of success. However, even if the Court were to use the traditional balancing of interest test, the Funds must prevail, because at a minium there are serious questions going to the merits to make them a fair ground for litigation and the balance of hardships would balance decidedly in favor of the Funds.

The facts establish that at a minimum there are fair ground for litigation on the delinquent contributions, based upon the fact that there is a written paper trail covering the debt and its non-payments. Thus, the sole issue is whether the balance of hardships tips toward the Funds. The Funds argue that it does.

Multi-employer plans "have a substantial impact on interstate commerce and are affected with

national interest." 29 U.S.C. 1001(a). The courts have recognized the important public interest in

protecting the retirement benefits of plan participants, noting that "the stability and protection (of

multi-employer pension plans) requires assurance of adequate funding and the prevention of arbitrary

termination rights." <u>Van Drivers Union Local No. 392 v. Neal Moving & Storage,</u> 551 F. Supp. 429,

432 (N.D. Ohio 1982).

Sections 502 and 515 of ERISA were enacted by Congress in order to provide ERISA

fiduciaries with the tools to serve this public interest in the collection of delinquent contributions. The

Sixth Circuit stated in <u>Northwest Concrete</u> that:

> "Congress made it abundantly clear that an employer
> would not be permitted to circumvent or ignore its
> funding, payment and other obligations under ERISA.
> The legislative history underlying Section 502 indicates
> that Congress intended that the enforcement provisions
> should have teeth: the provisions should be liberally
> construed 'to provide both the Secretary and
> participants and beneficiaries with broad remedies for
> redressing or preventing violations of the Act.'"

640 F.2d at 1352 (citations omitted). It seems abundantly clear that to Congress, as well as the Courts,

the balance of hardships lies in favor of the Plaintiffs Funds.


Defendants' side of the balance of hardships argument is that injunctive relief will, in a worst

case scenario, cause it undue financial burden. The courts have made it plain, however, that financial

hardship to the employer cannot overcome the irreparable harm risked by plaintiff funds and their

participating members if injunctive relief is denied. See, <u>Laborers International Pension Fund v.

Pacific Ascorp.,</u> 1990 U.S. Dist. Lexis 19030 (D. of Columbia May 30, 1990); <u>Central States Pension

and Health Funds v.McNamara Motor Express,</u> 503 F. Supp. 96, 99 ( S.D. Mich. 1980).

In the instant case, the Funds have  demonstrated substantial and irreparable harm if they

ultimately prevail on the merits and Defendants are unable to satisfy a judgement for the delinquent

contributions. In addition, as the above-discussed decisions and statutory provisions show, injunctive

relief is in the public interest, as expressed in ERISA, as well as necessary to the Funds' participating

members.  Whatever hardship may potentially be suffered by the Defendants, is clearly out-weighed

by the equities on the other side.  A preliminary injunction in favor of the Funds will insure that the

benefits funds are adequately funded, that the members retirement and benefit rights are protected, and

that the public interest is served.

## POINT IV

## POSTING OF SECURITY

Rule 65(c) provides:

> No restraining order or preliminary injunction shall
> issue except upon giving of security by the applicant,
> in such sum as the court deems proper, for the payment
> of costs and damages as may be incurred or suffered by
> any party who is found to have been wrongfully
> enjoined or restrained.

The District Court has the inherent discretion to dispense with a security bond as a condition

for preliminary restraint. Doctor's Associates, Inc. v. Stuart, 85 F.3d 975(2nd Cir. 1996).  Thus, in the

exercise of its discretion, the Court may decline to require the posting of any security at all. United

States v. Bedford Associates, 618 F.2d 904, 916-917 n.23 (2nd Cir. 1980), cert denied 456 U.S. 914

(1982); Holborn Oil Trading Ltd. v. Interpol Bermuda Limited, 658 F. Supp. 1205, 1211 (S.D.N.Y.

1987), Johnson v. Plainville Castings Co., 1988 U.S. Dist. Lexis 17076, 112 Lab. Cas. (CCH) P11306

(D. Conn. Nov. 7, 1988).  The discretion of the lower court is extremely wide.  Defendants will not

suffer any harm merely because they are  being required to do that which they are statutorily and

contractually required to do. The Funds' request is limited to requiring Defendants to pay amounts that

cannot be credibly challenged and  to fill out and submit missing Remittance Reports and then  pay

to the Funds the amounts that the completed Remittance Reports mandate.  Hence, the preliminary

relief is limited to requiring Defendants  to pay only those amounts that they cannot contest as being

owed. It is therefore respectfully requested that the Court in exercising its discretion with this application, dispense with the filing of security or a bond by the Funds. <u>Ferguson v. Tabak</u>, 288 F.2d 665, 675 (2nd Cir. 1961); <u>Clarkson v. Shaheen</u>, 544 F.2d 624, 632 (2nd Cir. 1976).

<b><u>CONCLUSION</u></b>

The Funds respectfully submit that the relief requested herein is appropriate. The undisputable facts establish that Defendants have decided that they will not pay monies which are necessary to provide the employees with medical insurance and other benefits. This is notwithstanding that Defendants cannot pose a substantive defense for the failure to comply. The relief requested is absolutely necessary in the circumstances at hand.

Dated: New York, New York
        January 31, 2008

Respectfully submitted,

*Raab, Sturm, Goldman & Ganchrow, LLP*

By: Ira A. Sturm (IS-2042)
Attorneys for the Plaintiffs Funds
317 Madison Avenue, Suite 1708
New York, New York 10017
(212) 683-6699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
BUILDING SERVICE 32B-J HEALTH          :
FUND, et al.                           :
                                       :
                    Plaintiffs,        :     05 Civ. 2547 (LAP)
                                       :
v.                                     :          ORDER
                                       :
LARO SERVICE SYSTEMS, INC.             :
                                       :
                    Defendant.         :
------------------------------------x

LORETTA A. PRESKA, United States District Judge:

Plaintiff, Building Service 32B-J Health Fund, Building Service 32B-J Pension Fund and Building Service 32B-J Annuity Fund (collectively, "Plaintiffs" or the "Funds") presently move for partial summary judgment and a preliminary injunction against Defendant Laro Service Systems ("Defendant"). For the reasons outlined below, Plaintiffs' motion for partial summary judgment and request for injunctive relief is granted.

I.   Background

Plaintiffs are benefit funds created pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002. Defendant is engaged in the commercial cleaning and maintenance business. Defendant employs approximately four hundred members of Local 32B-J, Service Employees International Union according to the terms of a collective bargaining agreement ("CBA") in effect since October of 2004. The CBA runs through December 2007.

Under the CBA, Defendant is obligated to make contributions to the Funds at specified intervals. Plaintiffs allege that the amounts owed under the CBA are as follows: (1) $1,014,210.08 for the October 2004 quarter; (2) $1,226,726.14 for the January 2005 quarter; and (3) a one time "stub payment" of $93,860. The total amount equals $2,334,796.22.

II. Plaintiffs' Summary Judgment Motion

As a threshold matter, Plaintiffs' motion for summary judgment on the issue of liability is uncontested. Plaintiffs allege, and Defendant admits, that Defendant is obligated to contribute ERISA funds pursuant to the CBA. Plaintiffs further allege that beginning with the payment owed in October 2004, Defendant has been delinquent on its payments to the Funds. Defendant also admits this allegation. Therefore, partial summary judgment on the issue of liability is appropriate.

III. Plaintiffs' Request for Injunctive Relief

"It is well established in this Circuit that a party seeking a preliminary injunction must show that it is likely to suffer possible irreparable injury if the injunction is not granted and either (1) a likelihood of success on the merits of the case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation." Reuters Ltd. v. United Press Intern., Inc., 903 F.2d 904, 907 (2d Cir. 1990)(internal

2

quotations omitted).   As Plaintiffs' summary judgment motion on
liability is granted, there is no question as to the likelihood
of success on the merits in this case.   The remaining issue is
whether Plaintiffs can satisfy the irreparable harm requirement.
The Reuters Court elaborated on the requirement:

> Because a showing of probable irreparable harm
> is the single most important pre-requisite for
> the issuance of a preliminary injunction . . .
> the moving party must demonstrate that such
> injury is likely before the other requirements
> for the issuance of an injunction will be
> considered.  Irreparable harm must be shown by
> the moving party to be imminent, not remote or
> speculative . . . and the alleged injury must
> be one incapable of being fully remedied by
> monetary damages.

Id.

Here, the cessation of benefits threatened by Defendants
failure to make contributions to the Funds raises the "spectre of
irreparable injury." Whelan v. Colgan, 602 F.2d 1060, 1062 (2d
Cir. 1979).   Further, the requirement that the alleged injury be
"incapable of being fully remedied by monetary damages," Reuters,
903 F.2d at 907, is inapplicable when it appears that a money
judgment will go unsatisfied absent equitable relief.  Alvenus
Shipping Co. v. Delta Petroleum(U.S.A.), 876 F. Supp. 482, 487
(S.D.N.Y. 1994).

Courts have consistently held that "the threatened
termination of medical coverage for workers and their families .
. . [raises] the spectre of irreparable injury." Whelan, 602

3

F.2d at 1062; see also Communication Workers of America, District
1 v. Nynex Corp., 898 F.2d 887, 891 (2d Cir. 1990); U.A.W. v.
Exide Corp., 688 F. Supp. 174, 186-87 (E.D.Pa), aff'd, 857 F.2d
1464 (3d Cir. 1988).   The loss of medical insurance and other
benefits qualifies as "harm shown to be non-compensable in terms
of money damages."  LaForest v. Former Clear Air Holding Company,
376 F.3d 48 (2d Cir. 2004).

    Defendant does not dispute this point of law.   Rather,
Defendant maintains that its delinquencies will not "undermine
the viability of the Funds," (Def's. Br., 7.) and therefore,
there will be no interruption of benefits for Defendant's
employees.   Defendant notes that its approximately 400 employees
represent just over one half of one percent of the total number
of employees (70,000) for whom contributions are being made.
(Def's Ex. A.)

    Defendants' proverbial "drop in the bucket" argument is
unavailing.   Plaintiffs have never represented that Defendant's
delinquency somehow threatens the viability of the Funds as a
whole and, by extension, Union benefits generally.   Instead,
Plaintiffs maintain that it is Defendants' employees whose
benefits are threatened, as the Funds cannot carry employees for
whom contributions are not being made indefinitely:

            In the event Laro fails to pay the April
            quarter, the Funds will have no choice but to
            cut off coverage for all employees.  This will
            result in all unit employees and their

                                    4

families losing their medical insurance; the
employees will suffer breaks in pension
coverage as they will no longer be working for
a "contributing employer"; they will lose all
future accruals to their annuities; they and
their families will no longer qualify for
college scholarships, training and educational
courses; and employees and their families will
no longer be entitled to free or reduced cost
representation by counsel.

(Affidavit of Nelson Valle, sworn to on April 13, 2005, ¶ 12.)

Plaintiffs therefore make quite clear that it is not the overall

health of the Funds that is at stake due to Defendant's

delinquency, but rather Defendant's employees' benefits.

On the second element of irreparable harm -- that the

alleged injury must be one incapable of being fully remedied by

monetary damages -- Defendants' bleak financial prospects are

grounds alone to address this issue. Demolition Workers Union

Local 95 Pension Funds v. Mackroyce Contracting Corp., 2000 U.S.

Dist. LEXIS 3548 at *28 (S.D.N.Y. March 17, 2000). Indeed, this

Court has already found that an exception to the "incapable of

being remedied by monetary damage" rule, where it is shown that a

money judgment will go unsatisfied absent equitable relief.

Alvenus Shipping Co., 876 F. Supp. at 487.

Defendant correctly notes that the financial situation

facing the defendants in Mackroyce and Alvenus was dire -- in

Mackroyce the defendant had filed for bankruptcy twice before the

case, 2000 U.S. Dist. LEXIS at *28, and in Alvenus there "was

nothing in the record to even remotely suggest that [defendant

5

had the ability to] pay," 876 F. Supp. at 486 -- but Defendants
here have given no reliable indication that their financial
condition is any more stable.  To be sure, Defendant's brief
fully describes its efforts to settle the outstanding dispute
with Plaintiffs (Def's. Br. 2, 5, 9), yet these representations
are undermined by Defendant's own references to its financial
circumstances.

Defendant owes Plaintiff a sum somewhere in the range of
$2,000,000 - $3,000,000.  Defendant's Chief Financial Officer,
Stephen Davidson, claims that in October 2004, Defendant had
"sufficient accounts payable to satisfy its obligations to the
Funds," but "certain circumstances in defendant's business caused
defendant to become delinquent in its contributions to the
Funds."  (Affidavit of Stephen Donaldson, sworn to April 21,
2005, ¶ 5.)  Defendant offers no other explanation for the
disappearance or migration of several million dollars over the
course of less than a year.  Further, Defendant acknowledges that
it might seek bankruptcy protection in the event that Plaintiffs'
application for injunctive relief is granted.  These are not the
type of representations that inspire confidence in Defendant's
financial future or its ability to pay the obligations that it
admits it owes.[1]  Accordingly, I find that the reasoning outlined

---

[1] It is also worth noting that Defendant, or companies
affiliated with Defendant, are subject to other ERISA litigations
(continued...)

6

in <u>Alvenus</u> is applicable here.

IV.   <u>Conclusion</u>

        Accordingly, Plaintiffs' motion for partial summary judgment
and for injunctive relief (Docket Nos. 10, 11, 12, 13) is
granted.  Plaintiffs' counsel shall confer with Defendant's
counsel and submit a proposed order no later than noon on July
19, 2005.


**SO ORDERED**

July _18_, 2005                                _Loretta A Preska_
                                               Loretta A. Preska, U.S.D.J.


---

(continued...)
concerning delinquent contributions: <u>Local 8A-28A Welfare Fund,
et al. v. Laro Service Systems, Inc.</u>, S.D.N.Y. Docket. No. 04-cv-
9058 (filed on November 17, 2004) and <u>Trustees of the Int'l Union
of Operating Engineers Local 30 Benefit Funds v. Laro Maintenance
Corporation</u>, E.D.N.Y. Docket No. 04-C-3441 (filed August 11,
2004).  These cases indicate a more widespread inability by
Defendant to meet its financial obligations.

7