UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

BUILDING SERVICE 32BJ HEALTH FUND,　　　　　:
BUILDING SERVICES 32BJ LEGAL SERVICES　　　:
FUND, BUILDING SERVICES 32BJ THOMAS　　　　:　　08-CV-00898 (RWS)(JCF)
SHORTMAN TRAINING, SCHOLARSHIP AND　　　　:
SAFETY FUND,

　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　Plaintiffs,　　　　　　:

　　　　-against-　　　　　　　　　　　　　:

SHAMROCK ACQUISITIONS, CORP. d/b/a　　　　　:
SHAMROCK BUILDING SERVICES AND　　　　　　　:
SHAMROCK BUILDING SERVICES　　　　　　　　　:
CORPORATION d/b/a SHAMROCK BUILDING　　　　:
SERVICES,

　　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　Defendants.　　　　　　x

--------------------------------------------------------------

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Of Counsel
　　　Alexander D. Pencu, Esq.
　　　Michael B. Golden, Esq.

Defendants, Shamrock Acquisitions, Corp. d/b/a Shamrock Building Services and Shamrock Building Services Corp. d/b/a Shamrock Building Services ("Shamrock"), by and through their attorneys and pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully submit this Memorandum of Law in Opposition to Plaintiffs, Building Service 32BJ Health Fund, Building Services 32BJ Legal Services Fund, Building Services 32BJ Thomas Shortman Training, Scholarship and Safety Training Fund's ("Funds"), Motion for a Preliminary Injunction.

## INTRODUCTION

The Funds' Motion should be denied because they cannot satisfy the high standard for irreparable harm. Assuming the "likelihood of success on the merits" were even evident, which Shamrock denies, the only injuries which the Funds assert are economic losses. Because an economic loss can be compensated with money damages, there is no "irreparable harm." Even if the Funds' alleged irreparable harm could be construed as a non-economic injury, there is no imminent need for a preliminary injunction. Furthermore, the balance of hardships weighs heavily in favor of Shamrock as the issuance of an injunction would cause it substantial harm and would not be in the public interest. Accordingly, the Court should deny the Funds' Motion.

## FACTUAL BACKGROUND

Shamrock is a Florida corporation doing business in various states including, Florida, New Jersey and Connecticut. The company is a family-owned enterprise that provides office cleaning services and employs approximately 945 employees. *See* Affidavit of Carl Shanahan ("Shanahan Affidavit") attached as Exhibit A at ¶¶ 4-10. Shamrock was started in 1969 in Connecticut but has expanded its services along the eastern seaboard through the acquisition of several companies providing janitorial services. *Id.* at ¶ 5.

In June 2005, Shamrock acquired a janitorial services company called Dekar Industries, Inc. ("Dekar"). At the time of the purchase, Dekar was already in arrears with respect to its employer contributions to the Funds.[1] *See* Shanahan Affidavit at ¶ 11. Shamrock nevertheless acquired Dekar and fully intended to assume and satisfy Dekar's outstanding obligations to the Funds. Notably, Shamrock did not create a separate subsidiary for the acquired company in an effort to insulate itself from any of Dekar's financial obligations. *Id.* at ¶¶ 11-14.

Following the Dekar acquisition, Shamrock suffered some financial setbacks which included the loss of a major New Jersey customer which had represented a substantial share of the company's New Jersey revenues. Shamrock suffered significant losses in 2006 which temporarily resulted in the company failing to pay a portion of its 2007 contributions to the Funds. *See* Shanahan Affidavit at ¶¶ 12-13. These temporary lapses were a direct result of the cash-flow shortage Shamrock experienced immediately after the Dekar acquisition and following the loss of its largest customer in New Jersey.[2] At no time did Shamrock receive any inquiry or complaint from the Funds regarding the interruption in its contribution or the possibility that Shamrock's employees would lose their benefits. *Id.* at ¶ 17. To the contrary, Shamrock's employees continued to receive their health, legal and other benefits which was to be expected since the Funds are a sizable multi-employer benefits administrator.

However, the company was able to recover in 2007 and has turned a profit in 2008 which is increasing month by month (see Shanahan Exhibit B). In addition to this turn-around, Shamrock is currently undergoing negotiations with lenders to refinance its operations to provide it with more working capital as it restores its operations to profitability. *See* Shanahan Affidavit

---

[1]     The Funds are jointly-administered, multi-employer, labor-management trust funds that administer employee benefit plans pursuant to the participants' various collective bargaining agreements and Section 302(c)(5) of the Taft-Hartley Act.

[2]     As previously noted, the past-due amounts to the Funds were owed by Dekar prior to its acquisition by Shamrock.

at ¶¶ 18-20.  The company has even resumed its employer contributions to the Funds beginning

in January 2008.  *Id.* at ¶¶ 3, 20, 27-29.  In short, Shamrock is now profitable.

Shamrock first received notice of this lawsuit when the Funds' counsel contacted its

President, Carl Shanahan on January 26, 2008.  Mr. Shanahan contacted the Funds'

representatives and the New Jersey and Connecticut employee representatives to discuss

resolution of the past-due amounts.  *See* Shanahan Affidavit at ¶¶ 25-29.

Without even an effort to open lines of communication to resolve this matter without

burdening the Court with another lawsuit, the Funds raced into Court and moved for a

preliminary injunction.  Specifically, the Funds seek an injunction to compel Shamrock to

contribute in one fell swoop an amount that is substantially more than the amount that the

company believes it owes.[3]  In addition, the Funds seek an injunction to compel payment for all

future contributions, notwithstanding the fact that Shamrock has resumed its employer

contributions.

There is no basis for the imposition of a preliminary injunction because the Funds'

alleged injuries are all compensable by monetary damages.  The Funds have not alleged nor

provided any evidence that they are in financial trouble.  To the contrary, the Funds were silent

with respect to Shamrock's interrupted contributions for the entire period in which the

interruption took place, a tacit admission that these multi-employer funds have adequate

---

[3]    The Funds' inflated figure is contested by Shamrock and unsupported by the parties' Collective Bargaining
Agreement or the ERISA laws.  For example, the Funds allege that Shamrock owes $1,240,224 in unpaid
contributions.  However, Shamrock's records substantiate a significantly lower number of $595,069.  Attached as
Exhibit A to the Shanahan Affidavit are copies of Shamrock's internal audit reports indicating the amount of unpaid
contributions.

The Funds' calculations of the interest and penalties owed are also incorrect.  By their own admissions, the
interest rate on the unpaid contributions is 6%.  However, the Funds demand an additional penalty of 2% per month
(24% annually) on the amount of the unpaid contribution notwithstanding the fact that such an exorbitant penalty
violates 29 U.S.C. § 1132(g)(2) which caps the liquidated damages to a maximum 20% interest on the unpaid
contribution.  *See* Affidavit of Nelson Valle in Support of Funds' Order to Show Cause at ¶ 14.

resources to continue covering the employees' benefits. *See* Shanahan Affidavit at ¶¶ 16-17. Notably, the Funds have also failed to allege or produce any evidence to indicate that the Shamrock employees' benefits have been or will be imminently terminated. The Funds have alleged only that "[i]n the event Defendants fail to pay the Funds, the Funds will have no choice but to cut off coverage for all employees." *See* Nelson Valle Affidavit in Support of Order to Show Cause at ¶ 19.

This conclusory assertion is unsubstantiated by any detailed information regarding timing or scope. Nevertheless, it is a moot issue since Shamrock has already resumed its contribution payments. *See* Shanahan Affidavit at ¶ 3. Moreover, the Funds cannot, on the face of their papers or otherwise, demonstrate a substantial likelihood of recovering their overstated damages because they are inapposite to the collective bargaining agreements as well as the ERISA laws. Shamrock is willing and able to provide all documentation evidencing the full unpaid contribution amount.

Shamrock has already indicated its willingness to pay the unpaid contribution amount. *See* Shanahan Affidavit at ¶¶ 21, 25-29, 31-33. However, a preliminary injunction mandating full-payment at once will hamper the company's ability to restructure its operations at precisely the time when it is engaging in such talks. If the Court imposes the preliminary injunction, it will compromise Shamrock's ability to secure future refinancing that would free more working capital. *Id.* at ¶¶ 21-24. Ultimately, an injunction that mandates an immediate repayment instead of a structured repayment as proposed by Shamrock, will harm the company's employees because it will require it to immediately satisfy a large obligation in excess of its monthly revenues. *Id.* As such, it would force Shamrock to dramatically cut costs, including laying off

many of its employees at a time when it would otherwise be engaging in the opposite course of action.

## ARGUMENT

The facts and law surrounding this case fall squarely against the imposition of a preliminary injunction. "A preliminary injunction is appropriate if the moving party demonstrates: (a) irreparable harm, and (b) either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in its favor." *Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d. Cir. 1997); *Hope et al., v. Trustees of Operative Plasterers' and Cement Masons et. al.,* 2006 U.S. Dist. Lexis 42475 (E.D.N.Y. 2006).

The extraordinary remedy of a preliminary injunction is not warranted in this dispute because the Funds cannot demonstrate irreparable harm. In addition, the Funds have not demonstrated that they can succeed on the merits for the inflated amounts they allege are owed. Finally, the balances of hardships tip heavily against imposing an injunction.

## I.    THE FUNDS CANNOT DEMONSTRATE IRREPARABLE HARM

"The most important prerequisite – the *sine qua non* – is that the plaintiffs establish that they will suffer an irreparable harm." *American Federation of Grain Millers et al., v. International Multifoods Corp. et al.,* 1993 U.S. Dist. Lexis 3070 (W.D.N.Y. 1993). Irreparable harm has been defined as a harm "that cannot be redressed by a monetary award." *JSG Trading Corp. v. Tray Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990). Accordingly, if the moving party fails to demonstrate any irreparable injury, the Court need not inquire further before denying the injunction. "In addition the plaintiffs must show more than a mere *possibility* that they will suffer an irreparable harm but must show that they are *likely* to suffer such harm." *Borey v.*

*National Union Fire Insurance Co.*, 934 F.2d 30, 34 (2d Cir. 1991); *American Federation of Grain Millers*, 1993 U.S. Dist. Lexis 3070 at *4.

The mere fact that an employer fails to make contributions to a multi-employer pension fund does not constitute *per se* irreparable harm. It is the plaintiff's burden to establish the imminence of the harm and the absence of an adequate remedy at law. *See King v. Nelco Industries, Inc.*, 1996 U.S. Dist. Lexis 22521 (E.D.N.Y. 1996); *Local 348 Health & Welfare Fund v. Milmar Food Group, LLC*, 2006 U.S. Dist. Lexis 19756 (E.D.N.Y. 2006). The decisions in *King* and *Local 348 Health & Welfare Fund* demonstrate that courts in this Circuit require that plaintiffs sustain their burden of establishing irreparable harm beyond mere conclusory or generalized allegations. Both of these cases involved employers that failed to contribute to multi-employer benefit plans in violation of sections 502 and 515 of ERISA. Notably, the employers did not enter appearances or otherwise defend the lawsuits. The courts awarded the plaintiffs monetary damages for the unpaid contributions, interest, penalties, attorneys' fees and costs. However, the courts *sua sponte* denied the plaintiffs' applications for preliminary injunctions that sought to prevent the defendants from future violations of the collective bargaining agreements because even in uncontested actions, the plaintiffs still retained the burden of proving that no adequate remedy at law existed. *See id.*

A moving party seeking a preliminary injunction must show that the injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. It must be actual and certain, not a mere theoretical possibility. *See American Federation of Grain Millers*, 1993 U.S. Dist. Lexis 3070 at *5; *Carabillo v. ULLICO Inc. Pension Plan and Trust*, 355 F.Supp. 2d 49, 54 (D.D.C. 2004). It is quite clear that a plaintiff's speculation of possible future injury does not establish the requisite imminence of irreparable harm. *See*

*Pattern Makers' Pension Trust Fund v. Erler Corp.*, 1992 U.S. Dist. Lexis 10193 (N.D.Ill 1992)

(denying preliminary injunction application); *American Federation of Grain Millers*, 1993 U.S.

Dist. Lexis 3070 at *5 (denying preliminary injunction application because alleged irreparable

harm due to employer's modification of benefits was too speculative because plaintiff's

allegations focused on the possibility of harm to retirees from the modification which without

something more concrete was insufficient as a matter of law).

Even the cases cited by the Funds hold that irreparable harm constitutes an injury that has

no adequate remedy at law and is an injury that is imminent as opposed to remote or speculative.

*See e.g. Demolition Workers Union v. Mason Tenders District Council*, 2000 U.S. Dist. Lexis

3548 (S.D.N.Y. 2000); *Chartier v. J&F Management Corp. et al.*, 1992 U.S. Dist. Lexis 17853

(S.D.N.Y. 1992) (both granting preliminary injunction because sufficient evidence was

submitted by the plaintiffs that the benefit funds were in precarious financial condition and that

their abilities to provide benefits to the employees were questionable thereby constituting

irreparable harm).

In this case, the Funds cannot sustain their burden in proving that they do not have

adequate remedies at law for Shamrock's unpaid contribution. The Funds have not alleged nor

proven that they are in danger of becoming insolvent or incapable of paying benefits to the

Shamrock employees without the immediate payment by Shamrock of its unpaid contribution.

As previously noted, the Funds are multi-employer benefit plans of which Shamrock is one of a

multitude of employers contributing to them. This fact along with the Funds' failure to provide

earlier notice to Shamrock regarding its delinquency weigh against a finding that the Funds are

in a perilous financial condition thereby warranting the imposition of an injunction.

Furthermore, Shamrock itself is solvent and is already taking measures to satisfy the unpaid

contribution. Accordingly, the Funds can properly pursue monetary damages and avail themselves of the associated penalties available under ERISA.

The recent decision in *Fanning v. High Mountain Inspection Services, Inc.*, 520 F. Supp. 2d 55 (D.D.C. 2007) explained the disparate relief provided to benefit funds in cases involving delinquent employer contributions. In *Fanning*, the plaintiff was a multi-employer pension fund which provided pension, disability and death benefits to employees working as operating engineers in the United States. The plaintiff's auditor discovered that the defendant, a participating employer owed an additional $1.5 million in contributions due to its alleged under-funding of the benefit plans. *Id.* at 58. The defendant disagreed with the contribution calculations and plaintiff's assessment of its obligations under the collective bargaining agreement with its employees. *Id.* The plaintiff sought a preliminary injunction to enjoin the alleged wrongful withholding of the overdue contributions as well as any contributions that became due during the time of this lawsuit. *Id.*

The court denied the preliminary injunction application on two principal reasons: (1) it determined that no irreparable injury existed and (2) an injunction would have caused substantial injury to the defendant's operations thereby tilting the balance of equities against its imposition. *Fanning*, 520 F. Supp. 2d at 60. In doing so, the court rejected the argument advanced in this litigation by the Funds, namely that a multi-employer pension fund will be irreparably harmed unless it receives the contributions it seeks from the participating employers. The court noted that irreparable harm was found to be limited to situations when it was clear that the benefit funds were in dire condition or could not collect from the employer. "Indeed, in the overwhelming majority of cases cited by plaintiff where the courts found that the pension funds would suffer irreparable harm, the financial security of the pension fund was at immediate and

serious risk, or the fund was unable to pay its obligations." *Id.* at 59. The court explicitly rejected situations, like the Funds' suit against Shamrock, where a dispute exists over the amount of unpaid employer contributions because no imminent injury exists and there is an option for monetary damages. "However it is well-settled that financial loss does *not* constitute irreparable injury because the financial loss can be remedied with money damages." *Id.*

Accordingly, the facts and law surrounding this litigation at this time weigh against the imposition of a preliminary injunction against Shamrock.

## II.   THE FUNDS ARE NOT LIKELY TO SUCCEED IN RECOVERING THE DAMAGES ALLEGED

Although Shamrock has offered to pay its unpaid contributions, the parties disagree over the actual amount owed to the Funds. The Funds seek a preliminary injunction compelling payment of $1,859,829 which constitutes the Funds' alleged total damages taking into account the unpaid contribution, interest, liquidated damages but not attorneys' fees and costs. The Funds have not substantiated the amount they claim Shamrock owes in unpaid contribution. As previously noted, Shamrock maintained meticulous records of its payable obligations and its records indicate that it owed only $595,069 as opposed to $1,240,224 in unpaid contributions as the Funds allege.

This disparity is exacerbated by the Funds' clear error in computing their liquidated damages. The liquidated damages penalty available to the Funds is authorized by 29 U.S.C. § 1132(g)(2). This statute provides the Funds with the option to elect as liquidated damages either: (i) interest on the unpaid contributions, or (2) liquidated damages provided under the plan in an amount not in excess of 20% unless specifically authorized by another federal or state statute. In this case, the Funds' stated liquidated damages, on its face violates 29 U.S.C. §

1132(g)(2) because it seeks liquidated damages of 24% which is in excess of the 20% cap mandated by the statute.[4]

However, a review of the Funds' calculations reveals an even higher liquidated damages figure with an interest rate representing between 31% to 48% of the unpaid contribution. Notably, the Funds have not substantiated their figures and the exhibits referenced in Nelson Valle's Affidavit in Support of the Order to Show Cause are equally opaque. *See* Exhibit C to the Valle Affidavit. Accordingly, the multitude of contested facts regarding the total amount owed makes it unlikely that the Funds will succeed in recovering the full amount of the damages they seek from Shamrock and for which the Funds are pursuing an injunction. *See Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72 (N.D.N.Y. 1987) (discussing the penalties under 29 U.S.C. § 1132(g)(2)).

Accordingly, in the unlikely event that a preliminary injunction is granted, it should be conditioned on the requirement that the Funds post a bond to secure an amount representing the difference between the parties' competing positions regarding the total amounts owed. Although the District Court is vested with wide discretion in determining whether to require a security bond, it is routine for courts to do so when the plaintiff moves for a preliminary injunction and overreaches in the relief sought and the injunction results in causing the defendant financial injury. *See International Equity Investments, Inc. et al., v. Opportunity Equity Partners LTD, et al.,* 2006 U.S. Dist. Lexis 23383 (S.D.N.Y. 2006); *Castlewood, Inc., et al., v. National Indemnity Company,* 2006 U.S. Dist. Lexis 77634 (S.D.N.Y. 2006); *Novartis Animal Health US, Inc. v. LM Connelly & Sons, PTY LTD, et al.,* 2005 U.S. Dist. Lexis 18062 (S.D.N.Y. 2005) (all requiring the posting of a security bond).

---

[4]     As previously noted, the collective bargaining agreement provides that the interest for unpaid contributions is 6%. Accordingly, under 29 U.S.C. § 1132(g)(2) the liquidated damages available to the Funds would be 20% because the statutory amount is higher than the interest rate available under the collective bargaining agreement.

### III.    THE BALANCE OF THE HARDSHIPS TIP IN FAVOR OF SHAMROCK

Taking into account the facts and established law surrounding the meaning of irreparable harm, the balance of hardships tip strongly in favor of Shamrock. The Funds have not presented any evidence to convince this Court that a remedy at law is not available for them to recover any unpaid contributions. This is particularly relevant given that Shamrock has produced evidence indicating that the company has turned the financial corner and is in negotiations to liberate additional capital, a portion of which will be used to satisfy its past-due obligations to the Funds.

By contrast, Shamrock has offered evidence clearly describing the hardship it faces if the Court grants the preliminary injunction and orders the total amount to be paid at once as opposed to the structured repayments proposed by Shamrock. A judicial order requiring Shamrock to immediately pay the outstanding unpaid contribution to the Funds would likely end the company's resurgence because it would immediately impose a significant cost that Shamrock would need to satisfy. Consequently, Shamrock's financing opportunities would likely disappear and the company would be forced to drastically reduce costs which would undoubtedly result in employee layoffs. Ironically, the employees that the Funds seek to "protect" would be the very same employees that would be at risk of losing their jobs. Given that the Funds have not demonstrated that they are in dire financial condition, which would necessitate an immediate repayment of the unpaid contribution, the balancing of hardships fall squarely in favor of Shamrock.

The court in *Fanning* declined to impose a preliminary injunction in favor of the plaintiff benefit fund precisely because the severity of the injunction would have crippled the defendant company. *See Fanning*, 520 F. Supp. 2d at 60. "The amount plaintiff seeks far outstrips the cash flow of this company, and, accordingly, an order to remit such an amount on an expedited basis

11

would result in substantial injury to it." *Id.* The court recognized that the plaintiff's interest in recovering the unpaid contribution "is a laudable goal, it can still be achieved if this lawsuit proceeds in its regular course. Moreover, the public interest would not best be served by forcing defendant into liquidation…" *Id. See also Connors v. Shannopin Mining Co.*, 675 F. Supp. 986, 989 (D. Pa. 1987) (denying preliminary injunction and stating that "while there is a strong public interest in the continued integrity of employee pension funds, the public also has an interest in the continued employment of the workers who are the ultimate beneficiaries of the trusts").

Accordingly, the Court should refrain from imposing the preliminary injunction because it will substantially prejudice Shamrock and its employees. The structured payment plan offered by Shamrock is a sensible solution in which the Funds are repaid and the company is able to retain its employees.

## CONCLUSION

Shamrock respectfully requests that the Court deny the Funds' motion for a preliminary injunction because the Funds have not shown any irreparable injury, have not demonstrated a likelihood to succeed in recovering their inflated damages and the balance of hardships tip heavily in favor of Shamrock.

Dated:  New York, New York
        April 29, 2008

Robinson & Cole LLP

BY: _____
MICHAEL B. GOLDEN (MG-0633)
ATTORNEYS FOR DEFENDANTS
885 Third Avenue, 28th Floor
New York, New York  10022
212-451-2900